**A. MICHAEL'S PIANO, INC., Tracy Patrick Smith, Nicholas Vitagliano and Maria Vitagliano, Plaintiffs–Appellants,**

v.

**FEDERAL TRADE COMMISSION, Defendant–Appellee.**

**No. 120, Docket 93–6051.**

United States Court of Appeals, Second Circuit.

Argued Aug. 31, 1993.

Decided March 3, 1994.

Jonathan W. Cuneo, Washington, DC, for Plaintiffs-Appellants.

John F. Daly, Appellate Staff, Civil Division, Department of Justice, Washington, D.C. (Leonard Schaitman, Attorney; Stuart E. Schiffer, Acting Assistant Attorney General; Albert S. Dabrowski, United States Attorney, Department of Justice, Washington, D.C., of counsel), for Defendant-Appellee.

Before: FEINBERG, CARDAMONE and ALTIMARI, Circuit Judges.

CARDAMONE, Circuit Judge:

The Federal Trade Commission (FTC) has in its possession corporate records voluntarily submitted to it by a manufacturer on the understanding they would be shielded from public disclosure. A former retail distributor of the submitting corporation's products seeks to obtain these records under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1988). Full agency disclosure under that "sunshine law" has as its premise the Founders' view that "the people are the only legitimate fountain of power, and it is from them that the constitutional charter, under which the several branches of government hold their power, is derived." *The Federalist No.* 49, at 313–14 (James Madison) (Clinton Rossiter ed., 1961). When the FOIA bill was before the Senate Committee on the Judiciary, the Committee focused on Madison's observation that our government, relying as it does on the consent of the governed, may not succeed unless its "people who mean to be their own governors ... arm

themselves with the power knowledge gives." S.Rep. No. 813, 89th Cong., 1st Sess. 2, 3 (1965). To arm the public with knowledge, it must be able to obtain information concerning the activities of federal agencies.

Of course, if every document in the possession of a federal agency was freely available to the press or public, not many documents would be voluntarily submitted. In striking a balance between the incompatible notions of disclosure and privacy when it enacted FOIA in 1966, Congress established—in the absence of one of that law's clearly delineated exemptions—a general, firm philosophy of full agency disclosure, and provided *de novo* review by federal courts so that citizens and the press could obtain agency information wrongfully withheld. *De novo* review was deemed essential to prevent courts reviewing agency action from issuing a meaningless judicial imprimatur on agency discretion. *See* S.Rep. No. 813, at 8.

Resolving the conflicting concerns of full public disclosure and the safeguarding of privacy rights is always a difficult task. In resolving that conflict on this appeal, the best path to follow is the one taken by Congress in 1966—one that protects both interests as much as possible, but with special emphasis on granting the fullest responsible disclosure.

## FACTS

Plaintiff, A. Michael's Piano, Inc. (Michael's Piano), appeals from a January 29, 1993 judgment of the United States District Court for the District of Connecticut (Covello, J.) granting defendant FTC's motion for summary judgment.[1] The FTC conducted an investigation of Steinway and Sons (Steinway) with respect to that manufacturer's warranty practices regarding allegedly defective pianos in the years 1990–92. Michael's Piano sought disclosure under FOIA of materials generated by that investigation.

Michael's Piano, whose business is located in Waterford, Connecticut, became an authorized Steinway dealer in September 1982 and soon became the largest single-location Steinway dealer in the nation. Its success was attributed, it tells us, in part to its steadfast refusal to follow Steinway's "suggested" retail prices. While well pleased with its retailer's sales record, Steinway representatives pressured the dealer to adhere to the manufacturer's suggested retail prices. This difference in marketing approach culminated in late 1987 when Steinway offered a new dealership contract to Michael's Piano, which would have replaced their already existing contract. The dealer refused it. Steinway thereafter refused to ship Michael's Piano new pianos for resale.

Plaintiff continued to sell Steinway pianos from its inventory from 1987 to 1989 and to service those it had already sold. In the course of servicing those pianos, the retailer allegedly noticed a number of instruments with cracked soundboards and in some cases separations of the soundboards from the ribs that hold them in place. In 1990 approximately 60 of the retailer's customers called the State of Connecticut's attention to problems they were experiencing with Steinway pianos. The Connecticut Attorney General forwarded a number of these complaints to the FTC. The complaints averred that Steinway had failed to honor warranties, particularly those with respect to cracks or other asserted flaws in the soundboards of its pianos. The FTC thereafter commenced an investigation into these allegations to determine whether it should take legal action against Steinway for possible violations of either § 5 of the FTC Act, 15 U.S.C. § 45 (1988), or the FTC's rules implementing the Magnuson–Moss Warranty–Federal Trade

1. There were three additional individual plaintiffs in the trial court who made no appeal from the court's grant of summary judgment to appellee FTC. Appellate jurisdiction exists only as to Michael's Piano because it is the only party specifically designated as an appellant in the notice of appeal. The other plaintiffs were ostensibly included in the notice of appeal by the use of the Latin phrase "et al." following the plaintiff's identification as "A. Michael's Piano, Inc." But the use of the term "et al." ("and others") in a notice of appeal does not designate such parties as appellants with requisite specificity sufficient to make them appealing parties subject to our jurisdiction. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 317–18, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Shatah v. Shearson/American Express, Inc.*, 873 F.2d 550, 552 (2d Cir.1989).

Commission Improvement Act, 15 U.S.C. §§ 2301–2312 (1988).

The preliminary or "initial phase" investigation was commenced under the authority of the Director of the FTC's Boston Regional Office and conducted principally by Sara Greenberg, an FTC attorney. In January 1991 Ms. Greenberg filed a memorandum that made a recommendation regarding whether the investigation should be expanded into a "full-phase" investigation—a determination that had to be made by the Director of the FTC's Bureau of Consumer Protection. *See Federal Trade Commission Operating Manual* § 3.5.1 (1991). Dennis Murphy, an FTC economist assigned to assist in the investigation, also prepared a memorandum as to whether the initial investigation should be carried further. Following submission of these recommendations, a "full-phase" investigation was authorized by appellee's Bureau of Consumer Protection.

During both phases of the investigation, the FTC requested and received information from Steinway and from a number of other persons and piano manufacturers, including, for example, Baldwin Piano and Organ Company, Kawai America Corporation, Mason & Hamlin Corporation, Yamaha Corporation of America, Schimmel Piano Corporation and C. Bechstein Piano Corporation, all competitors of Steinway. During the preliminary part of the inquiry on September 24, 1990 the FTC made a written request of Steinway for information. This letter requested a broad range of documents and information concerning the manufacturer, its dealers, manufacturing processes, and warranty practices. The letter requested that Steinway submit this material "voluntarily ... [i]n furtherance of [the pending] investigation." It further stated the FTC's understanding that, pursuant to § 21(f) of the FTC Act, 15 U.S.C. § 57b–2(f), information "provided voluntarily in lieu of compulsory process in a law enforcement investigation, such as [that] provided in response to this letter, [is] exempt from public disclosure under [FOIA Exemption 3]."

Later, during the full-phase investigation, the FTC sought by letter of March 7, 1991 further voluntary submissions from Steinway. In response to these FTC requests Steinway voluntarily submitted a substantial amount of additional information. The FTC also sought, orally or in writing, and received information from a number of retail piano dealers, technicians, and owners. The appellee's staff informed the persons solicited that information voluntarily submitted in this manner would be protected by § 21(f). Michael's Piano seeks disclosure of these materials.

During its investigation, the FTC engaged an expert consultant, David Betts, to inspect the soundboards of a number of Steinway pianos and to provide advice concerning the existence and extent of any defects. Michael's Piano also seeks copies of the correspondence between Mr. Betts and Ms. Greenberg regarding these inspections.

In December 1991 Ms. Greenberg prepared a memorandum analyzing the issues presented and making a recommendation regarding the final disposition of the inquiry. Again, final authority for a decision to close or to proceed further with the investigation rested with the Director of the Bureau of Consumer Protection. In January 1992 the Bureau of Consumer Protection closed the investigation. Michael's Piano seeks copies of Ms. Greenberg's memorandum and other inter-office memoranda leading up to this disposition of the case.

Plaintiff submitted a formal FOIA request to the FTC in January 1992, seeking copies of all letters and documents gathered by the FTC during its investigation of Steinway. The FTC granted the request, in part, and denied it, in part, citing FOIA exemptions 3 and 4 as protecting those records voluntarily submitted by Steinway and others, and FOIA exemption 5 as shielding internal FTC documents. Michael's Piano took an administrative appeal from this determination, which was denied by the FTC's General Counsel in a letter dated May 12, 1992.

On July 13, 1992 plaintiffs filed the instant suit in the District of Connecticut. The FTC moved for summary judgment on October 19, and after plaintiffs responded on November 20, 1992, the district court granted the motion on January 27, 1993. From this judgment, Michael's Piano appeals.

DISCUSSION

Two issues are presented for our analysis: one under exemption 3 and the other under exemption 5 of FOIA. We must decide first whether the documents submitted to the FTC during its investigation qualify as information "provided voluntarily in place of ... compulsory process," within the meaning of § 21(f) of the FTC Act, 15 U.S.C. § 57b–2(f) (1988), and are therefore exempt as a matter of law from disclosure under FOIA exemption 3, 5 U.S.C. § 552(b)(3). Second, it must also be determined if any material issues of fact exist regarding whether the requested memoranda and other internal FTC documents meet the requirements of exemption 5, 5 U.S.C. § 552(b)(5), so as to be exempt from disclosure.

I FOIA Exemption 3

A. *Obtaining Exemption 3 Exclusion from Disclosure*

FOIA, as its name suggests, expresses a public policy in favor of disclosure so that the public might see what activities federal agencies are engaged in. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press,* 489 U.S. 749, 772, 109 S.Ct. 1468, 1481, 103 L.Ed.2d 774 (1989); *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976). To that end, any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions. *See* 5 U.S.C. § 552(a)(4)(B). It is the responsibility of the federal courts to conduct *de novo* review when a member of the public challenges an agency's assertion that a record being sought is exempt from disclosure. *See id.* The burden of proof, upon such review, rests with the agency asserting the exemption, with doubts resolved in favor of disclosure. *See Federal Labor Relations Auth. v. United States Dep't of Veterans Affairs,* 958 F.2d 503, 508 (2d Cir.1992).

The extent of most FOIA exemptions, which reflect Congress' recognition that releasing certain records might prejudice legitimate private or governmental interests, *see FBI v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982), are defined by FOIA itself. But exemption 3, with which the present discussion is concerned, incorporates the policies of other statutes. A subject statute that meets exemption 3 requirements may effectively exclude certain matters from disclosure, namely, as stated in exemption 3, those matters "specifically exempted from disclosure by [the subject] statute." 5 U.S.C. § 552(b)(3).

The two threshold criteria needed to obtain exemption 3 exclusion from public disclosure are that (1) the statute invoked qualifies as an exemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope. *See CIA v. Sims,* 471 U.S. 159, 167, 105 S.Ct. 1881, 1886, 85 L.Ed.2d 173 (1985); *Baldrige v. Shapiro,* 455 U.S. 345, 352–53, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199 (1982). The parties agree that § 21(f) of the FTC Act meets the first criteria of the *Sims* test. Section 21(f) provides:

> Any material which is received by the Commission in any investigation, a purpose of which is to determine whether any person may have violated any provision of the laws administered by the Commission, and which is provided pursuant to any compulsory process under ... [the FTC Act] or which is provided voluntarily in place of such compulsory process shall be exempt from disclosure under section 552 of Title 5.

15 U.S.C. § 57b–2(f). The parties are also in accord that none of the documents sought were submitted to the FTC "pursuant to any compulsory process."

B. *Scope of Review*

The parties believe we must decide the scope of review to be applied to the withholding statute. Michael's Piano urges that the withholding statute—here § 21(f)—should be construed narrowly as are the FOIA exemptions themselves. The FTC disagrees. Courts have differed on this issue. *Compare Aronson v. I.R.S.,* 973 F.2d 962, 965–66 (1st Cir.1992) *with Anderson v. Department of Health & Human Servs.,* 907 F.2d 936, 950–51 (10th Cir.1990).

In *Anderson* the Tenth Circuit declined to give a broad construction to an exemption set forth in the Food, Drug & Cosmetic Act because of the narrow construction accorded FOIA's exemptions. *See* 907 F.2d at 951. The contrary rationale relied on by the First Circuit in *Aronson* was that principles applicable to FOIA did not square with Congress' purpose in enacting the tax information disclosure statute at issue. The withholding statute's provisions must therefore be examined, the First Circuit stated, under deferential administrative law standards, as set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984), which only permit reversal by a federal court when the agency interpretation is arbitrary, capricious or an abuse of discretion. *See* 973 F.2d at 965–67.

Several other circuits have joined the Tenth Circuit in ruling that FOIA disclosure and review requirements—not deferential administrative law standards—govern the same tax withholding statute presented the First Circuit in *Aronson. See, e.g., Church of Scientology v. IRS,* 792 F.2d 146, 148–50 (D.C.Cir.1986), *aff'd,* 484 U.S. 9, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987); *Grasso v. IRS,* 785 F.2d 70, 74–75 (3d Cir.1986); *Linsteadt v. IRS,* 729 F.2d 998, 1003 (5th Cir.1984); *Currie v. IRS,* 704 F.2d 523, 526–27 (11th Cir.1983). *But see King v. IRS,* 688 F.2d 488, 493 (7th Cir.1982).

█ We see no need to choose sides in the conflict between our sister circuits. As the FTC correctly points out, the Supreme Court has never applied a rule of narrow or deferential construction to withholding statutes. Thus, we follow the approach taken by the Supreme Court in construing withholding statutes, looking to the plain language of the statute and its legislative history, in order to determine legislative purpose. *See, e.g., CIA v. Sims,* 471 U.S. at 168–73, 105 S.Ct. at 1887–90.

C. *Construction of Section 21(f)*

The exemption 3 issue then is whether the documents Michael's Piano thinks it is entitled to see were "provided voluntarily in place of such compulsory process." Conducting a *de novo* review we must determine whether the FTC met its burden of proving that the documents withheld pursuant to Exemption 3 fell within the scope of § 21(f) of the FTC Act. In granting summary judgment for the FTC, the district court broadly construed § 21(f) as exempting from disclosure all materials voluntarily provided. Because its plain language sheds no light on how courts should construe this withholding statute, we address the litigants' arguments with reference to § 21(f)'s legislative history.

Appellant's principal disagreement with the trial court's ruling is that the material appellant sought was never subject to compulsory process because such may only be initiated by the Federal Trade Commission itself, not the Regional FTC or its staff officers or attorneys. Hence, absent a viable possibility of compulsory process, appellant tells us, there can be no voluntary submission of materials in place of compulsory process. Michael's Piano further declares the district court's reasoning was wrong because it makes disclosure to the public more difficult, contrary to the teaching of the Supreme Court that exemptions to FOIA are to be narrowly construed. *See United States Dep't of Justice v. Tax Analysts,* 492 U.S. 136, 151, 109 S.Ct. 2841, 2851, 106 L.Ed.2d 112 (1989).

█ The statute cannot be read to turn on whether material submitted voluntarily was so provided because compulsory process was a "viable possibility." Such a vague and amorphous formulation would create needless difficulties for the courts that would be obliged to apply it. It would be particularly inappropriate in the FOIA context where the Supreme Court views the FOIA exemptions as being intended to set up "concrete, workable standards for determining whether particular material may be withheld" from public scrutiny, *see EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973).

█ While we reject the amorphous construction of § 21(f) offered by Michael's Piano, we also reject that offered by the district court, which ruled, in effect, that all voluntarily submitted documents were exempt. This interpretation of § 21(f) is too broad. Were all information voluntarily fur-

nished an agency in the course of an investigation exempt, the public would be denied access to information that FOIA envisions being disclosed. Moreover, the ruling reads out of the plain language of the FTC Act the limitation on the withholding provision at issue—that the materials be submitted in lieu of compulsory process. For example, under the district court's broad ruling, public access to information furnished by third parties other than the target of the investigation would be foreclosed, even when the material had not been sought by the agency. It would also preclude public access to materials furnished that are not relevant to, or are outside the scope of the investigation, and for that reason not subject to the agency's subpoena power. *Cf. FTC v. Carter,* 636 F.2d 781, 788 (D.C.Cir.1980) (documents "not plainly irrelevant" may be subpoenaed). Such broad exemption creates too heavy a cloak of gratuitous secrecy. Hence, we cannot adopt it.

Moreover, the legislative history of § 21(f) indicates that in enacting § 21(f) Congress did not plan for the exemption to apply to all materials voluntarily submitted to the FTC during the course of an investigation. The most pertinent information is found in H.R.Conf.Rep. No. 917, 96th Cong., 2d Sess. 27 (1980), *reprinted in* 1980 U.S.C.C.A.N. 1073, 1143. That Report explains, in a joint statement by House and Senate managers, the effect of their actions in amending the Federal Trade Commission Act when the two Houses of Congress had disagreeing votes. On the subject of the confidentiality of materials received by the FTC, the House bill had no provision. The Senate amendment was extremely broad, providing that: "*any* material provided pursuant to *any* demand *or otherwise* provided by *any* person shall be exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)." *Id.* at 32, 1980 U.S.C.C.A.N. at 1149 (emphasis furnished).

The Conference substitute substantially narrowed the Senate's version and specified that any material received in a Commission investigation, provided it was pursuant to compulsory process under the Act or voluntarily in lieu thereof, shall be exempt from disclosure under FOIA. *Id.* at 33, 1980 U.S.C.C.A.N. at 1149–50. Thus, Congress planned for the words "provided voluntarily in place of such compulsory process" to be a limit on the scope of § 21(f).

The FTC in arguing for a broad construction of the exemption provision points to remarks by Senator Ford, a sponsor of the FTC Improvements Act of 1980, who noted the difficulties that the FTC encountered in obtaining information from businesses because of fears that confidential information would be publicly disclosed. *See* 126 Cong. Rec. 11914 (1980). But the FTC neglected to call to our attention other remarks made by Senator Ford during the same debate: "The main purposes of the exemption are to protect proprietary data without affecting agency accountability to the public through the FOIA and to encourage compliance with legitimate information demands." *Id.*

As a consequence, while it is true that the confidentiality provision of the FTC Act was intended to encourage disclosure to the FTC by businesses, it is also true that Congress did not intend to create a broad exemption that would effectively eliminate the FTC's accountability to the public. In fact, it is evident from the Senate debates that a major impetus for the bill was to curtail the FTC's abuse of its power. For example, as Senator Cannon stated:

> The real reason that we have proposed this legislation for the FTC is because the Commission appeared to be fully prepared to push its statutory authority to the very brink and beyond. The FTC lost sight of the necessity to listen to the evidence and legal arguments of its opponents. Good judgment and wisdom had been replaced with an arrogance that seemed unparalleled among independent regulatory agencies.

*Id.* at 11917. We do not believe Congress aimed to curtail the FTC's exercise of its authority and at the same time provide it with a blanket exemption from FOIA for all documents submitted to it voluntarily.

Instead, guided by Congress' aim, the language and the legislative history of § 21(f), we think a workable standard is one that permits the FTC properly to invoke § 21(f) by showing that (1) it had requested

documents that were (2) relevant to an ongoing investigation within its jurisdiction and (3) the documents could have been subpoenaed had the party refused to comply with the FTC's requests. The FTC has authority to issue civil investigative demands or subpoenas, *see* 15 U.S.C. § 57b–1(c)(1), so long as the demand for information is signed by a Commissioner pursuant to a Commission resolution. *See id.* § 57b–1(i); *see also* 15 U.S.C. § 49 (1988) (authorizing FTC to subpoena documents related to an investigation); *McDermott v. FTC,* 1981–1 Trade Cas. (CCH) ¶ 63,964, 1981 WL 2056 (D.D.C.1981).

The FTC need not go to the trouble of actually authorizing the issuance of a subpoena for the production of these documents, so long as a reviewing court is satisfied that the documents then in the agency's possession were, when obtained, subject to the agency's subpoena power. Because the district court ruling in the case at hand may have inadvertently limited public disclosure, we must remand the exemption 3 portion of the case to the district court for it to apply the three factors just outlined in order to determine whether exemption from disclosure to any challenged documents is appropriate.

## II FOIA Exemption 5

We turn now to appellants' request for documents that the FTC claims are shielded from public disclosure as internal agency records. FOIA exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption incorporates into FOIA all the ordinary civil discovery privileges. *See Hopkins v. United States Dep't of Hous. & Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991). We are unable to discern any genuine issues of material fact that would suggest the documents the FTC withheld as exempt under exemption 5 do not fall under either the attorney work product or the deliberative process privileges.

### A. *Attorney Work Product*

The attorney work product privilege protects "the files and the mental impressions of an attorney ... reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways" prepared in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Although factual materials falling within the scope of attorney work product may generally be discovered upon a showing of "substantial need" under Fed. R.Civ.P. 26(b)(3), under exemption 5 the test is whether information "would 'routinely be disclosed' in private litigation." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 149 n. 16, 95 S.Ct. 1504, 1516 n. 16, 44 L.Ed.2d 29 (1975) (quoting H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966)).

Michael's Piano does not dispute that the FTC documents at issue fall within the categories of materials covered by the work product privilege as incorporated by exemption 5. Rather, its position is that because some of the documents may have been prepared after the staff attorney in charge of the investigation (Ms. Greenberg) had decided not to recommend enforcement litigation, there is a material issue of fact as to which documents were prepared "in anticipation of litigation." That is to say, some of the withheld documents may have been prepared in anticipation of closing the investigation.

The district court ruled that exemption 5 still applies, even if a staff attorney is considering or recommending closing an investigation. The courts have taken a flexible approach in determining whether the work product doctrine is applicable, asking not whether litigation was a certainty, but whether the document was created "with an eye toward litigation." *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393. Here the FTC investigation was not closed at the time the documents at issue were created, and the fact that staff members may have thought that litigation might not ever occur does not take the documents out of the scope of those materials exempt because they were created in anticipation of litigation. Instead, the reports and recommended action with respect to the status of an investigation submitted before any final decision is made as to the

course an investigation qualify as documents prepared in anticipation of litigation. Hence, the district court's determination that there was no material issue of fact and its subsequent grant of summary judgment on this issue should be affirmed.

B. *Deliberative Process*

The government's deliberative process privilege "protects the decisionmaking processes of the executive branch in order to safeguard the quality and integrity of governmental decisions." *Hopkins,* 929 F.2d at 84. For the privilege to apply the document must be a predecisional and not a "postdecisional memoranda setting forth the reasons for an agency decision already made." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.,* 421 U.S. 168, 184, 95 S.Ct. 1491, 1500, 44 L.Ed.2d 57 (1975).

Appellant asserts there are factual questions as to whether certain withheld documents were postdecisional explanations of the FTC's prior decision to close the Steinway investigation. Specifically, it avers a memorandum from Ms. Greenberg to the FTC's Director of the Bureau of Consumer Protection, containing her recommendation regarding the disposition of the investigation, may have been written after the real decision to close the investigation had been made and that the intention of the "closing memorandum" furnished an informal record of why the agency did not pursue a particular investigation.

But the investigation was not closed and Ms. Greenberg had no authority to close it. As already explained, only the Director of the Bureau of Consumer Protection had the authority to make such a decision. The Supreme Court instructs that advisory reports by individuals without authority to issue final agency dispositions are predecisional. *See Renegotiation Bd.,* 421 U.S. at 185–87, 95 S.Ct. at 1500–01; *Hopkins,* 929 F.2d at 85 ("[B]ecause HUD inspectors themselves lack any authority to take final agency action, their reports are necessarily predecisional."). Thus, the questioned memorandum falls under the deliberative process privilege and is exempt from public disclosure under exemption 5.

Michael's Piano further maintains that other withheld documents are not privileged deliberative process documents because they are factual in nature. It cites, as examples, the report made by David Betts after he inspected Steinway pianos that allegedly had defective soundboards and interim reports summarizing the facts of the investigation. The work product privilege draws no distinction between materials that are factual in nature and those that are deliberative. *See Martin v. Office of Special Counsel, MSPB,* 819 F.2d 1181, 1187 (D.C.Cir.1987). Because the documents withheld are privileged under the work product doctrine, it is irrelevant that they do not also fall within the scope of the deliberative process privilege.

In sum, the district court's grant of summary judgment as to the withholding of documents under exemption 5 should be affirmed because there is no material issue of fact as to whether they were created in anticipation of litigation or were predecisional intra-agency documents aiding in the FTC's decisionmaking process.

CONCLUSION

For the reasons stated, the judgment appealed from is accordingly affirmed, in part, and vacated and remanded, in part, for further proceedings consistent with this opinion.