SECURITY INSURANCE COMPANY OF HARTFORD, Plaintiff,

v.

TRUSTMARK INSURANCE COMPANY, Defendant.

Civ. No. 3:01CV2198(PCD).

United States District Court, D. Connecticut.

June 10, 2003.

30

Alia L. Smith, Christine Y. Wong, David J. Grais, James L. Hallowell, Kathryn E. Nealon, Mark B. Holton, Gibson, Dunn & Crutcher, Erick M. Sandler, Kathryn C. Ellsworth, Robert J. Morrow, Dewey Ballantine, New York City, Frank F. Coulom, Jr., Marion B. Manzo, Robinson & Cole, Hartford, CT, for Plaintiff.

Amy M. Rubenstein, David Spector, Dennis G. LaGory, Everett J. Cygal, Michael Mullins, Paula J. Morency, Ronald S. Safer, William E. Meyer, Jr., Schiff, Hardin & Waite, Chicago, IL, Jeffrey R. Hellman, Jef-

frey M. Sklarz, Zeisler & Zeisler, P.C., Bridgeport, CT, for Defendant.

*RULINGS ON DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S PRODUCTION OF DOCUMENTS, DEFENDANT'S MOTION TO COMPEL TIG'S RESPONSE TO DISCOVERY REQUESTS, PLAINTIFF'S MOTION TO COMPEL DEFENDANT'S PRODUCTION OF DOCUMENTS AND TIG'S MOTION FOR EXPEDITED CONSIDERATION*

DORSEY, District Judge.

Presently pending before this Court are defendant's motion to compel plaintiff's production of documents and for additional deposition time with Kevin Ryan, defendant's motion to compel third-party defendant TIG Insurance Company ("TIG") and its Rule 30(b)(6) representative to respond to questions he refused to answer during his deposition and to produce documents, plaintiff's motion to compel the production of documents and TIG's motion for expedited consideration of its motion to compel production of hard drives for WEB computers. For the reasons set forth herein, defendant's motions to compel are granted in part, plaintiff's motion to compel is granted in part and TIG's motion is granted.

## I. DEFENDANT'S MOTION TO COMPEL PLAINTIFF'S PRODUCTION

█ Defendant moves to compel production of a draft expert report of plaintiff's alleged expert witness, Kevin Ryan, and a memorandum prepared by attorneys at Gibson, Dunn & Crutcher summarizing Ryan's investigative findings as to the rescission of the reinsurance agreement with TIG. Defendant further seeks additional time in which to depose Ryan. Plaintiff responds that the documents sought are privileged and thus not subject to production and additional deposition time is not warranted.

The dispute as to Mr. Ryan turns on whether at present he may properly be characterized as a testifying expert witness for plaintiff. Plaintiff does not dispute that Mr. Ryan was directed to prepare an expert report were it necessary to call him as an expert, but it does dispute defendant's claim that he was retained for purposes of serving in the capacity of an expert witness and that he will provide expert testimony. Plaintiff contends "Mr. Ryan was retained ... to provide as objective assessment of the grounds for rescission [of the reinsurance agreement between plaintiff and TIG] contained in [defendant's] November 2, 2001 letter [to plaintiff]." Defendant served plaintiff with a Rule 30(b)(6) deposition notice to inquire as to plaintiff's investigation of the letter, and Mr. Ryan, having investigated the allegations therein, appeared at the deposition. Plaintiff has not identified Mr. Ryan as an expert witness and intends to offer him as a fact witness.

Contrary to defendant's argument, it is not apparent, under the circumstances, that Ryan need be characterized as a testifying expert, thereby subjecting him and his reports to the disclosure requirements of FED. R. CIV. P. 26(b). Ryan, as a fact witness, may appropriately testify to observations made in the course of an investigation and conclusions derived therefrom provided his testimony does not require specialized knowledge. *See Brady v. Chem. Const. Corp.*, 740 F.2d 195, 200–01 (2d Cir.1984) (involving characterization of witness testimony involving fraud investigation). His present role, as argued by plaintiff, is supported by his testimony indicating that he was retained as a "consulting expert" but not as an "expert witness".[1] Ryan Dep. at 8. As plaintiff has not yet been obliged, nor chosen, to designate Mr. Ryan as an expert witness, Mr. Ryan's role will not be anticipated and plain-

---

1. Defendant, in its reply, argues that plaintiff can not have it both ways, retaining a witness as an expert but characterizing the witness as a fact witness. The expert witness/fact witness is not inappropriate as the relevant inquiry is not whether a witness was retained as a possible expert, but rather whether the disclosure dead- line for designating such witness as an expert has passed. Until such deadline, and mindful of prohibitions imposed by FED. R. CIV. P. 26 for failure to comply with disclosure requirements should a witness be called as an expert at trial, a party need not accommodate advance request for materials generated by the witness.

tiff's present characterization of him will be accepted.

Absent Mr. Ryan's characterization as an expert witness, the draft expert report need not be produced at this time. If Ryan is not testifying as an expert but drafted a report in that capacity for plaintiff's attorneys, the document need only be produced on a showing of "substantial need." FED. R. CIV. P. 26(b)(3); *A. Michael's Piano, Inc. v. Fed. Trade Comm'n,* 18 F.3d 138, 146 (2d Cir. 1994). Defendant has not established such a need, thus the report will not be ordered produced.

■ The memorandum summarizing Ryan's investigative findings is a separate matter. The substance of the work product doctrine codified in Rule 26(b)(3) protects "the files and the mental impressions of an attorney ... reflected ... in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways prepared in anticipation of litigation." *Id.* (internal quotation marks omitted). The protection is not, however, absolute and may be waived through voluntary disclosure of work product material. *See United States v. Nobles,* 422 U.S. 225, 239–40, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Ryan's findings were discussed extensively in the 30(b)(6) investigation, as were his opinions on such findings. As such, to the extent the memorandum touches on matters discussed in the deposition, work product protections are waived. The mental impressions and opinions of counsel would not be waived, however, as Ryan's testimony was limited to his findings and bases therefor. Plaintiff is therefore ordered to produce a copy of the memorandum redacted to the extent it addresses matters outside the findings and opinions of Ryan discussed in the deposition.

■ Defendant also requests additional time in which to depose Ryan. FED. R. CIV. P. 30(d)(2) provides that "a deposition is limited to one day of seven hours" unless "additional time consistent with Rule 26(b)(2) i[s] needed for a fair examination of the deponent or if the deponent or another person, or other circumstance, impedes or delays the examination." A review of the deposition tran-

script and the scope of the notice of deposition does not support defendant's argument that more time is justified. As Mr. Ryan is not a designated expert witness and discussed his investigative findings extensively over the course of his seven hour deposition, it is not apparent why more time would be required to discuss his findings.

Defendant's motion to compel plaintiff's production of documents is granted in part and motion for additional time in which to depose Ryan is denied.

## II. DEFENDANT'S MOTION TO COMPEL TIG

■ Defendant also moves to compel responses to its discovery requests seeking facts underlying TIG's denials in its answer to defendant's complaint. TIG responds that its refusal to respond to the requests is properly grounded in attorney client privilege and the work product doctrine and, to the extent the information is not protected, it has addressed the requests through its responses to interrogatories.

"[T]he scope of discovery under FED. R. CIV. P. 26(b) is very broad, 'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.,* 964 F.2d 106, 114 (2d Cir.1992) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978)). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). The scope of discovery, however, is not without bounds, and limitations are imposed where the discovery is "unreasonably cumulative or duplicative," overly "burdensome ... [or] expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(2). An order compelling discovery is rendered after consideration of the arguments of the parties, and such order may be

tailored to the circumstances of the case. *Gile v. United Airlines, Inc.*, 95 F.3d 492, 496 (7th Cir.1996).

On February 10, 2003, defendant served TIG with a Rule 30(b)(6) deposition notice, requesting that TIG "designate the corporate representative with the most knowledge of TIG's denials in its Answer to Trustmark's Third–Party Complaint against TIG." TIG designated Michael Westover as its representative. TIG asked that defendant withdraw its request claiming that counsel had investigated the allegations, that the deposition would be pointless as the information sought was privileged and that defendant had already deposed all witnesses with first-hand knowledge of the subject matter on which the deposition would be conducted. Notwithstanding these admonitions, the deposition was scheduled and was marked by frequent objections to the questioning.

Defendant now seeks an order directing TIG to respond with its factual basis for its denials in its answer that Westover refused to answer in his deposition, compelling production of all documents on which TIG bases such denials and ordering TIG to pay costs associated with the present motion to compel.

TIG's refusal to respond to the discovery requests rests on a privilege or work doctrine theory based on the compilation of documents in anticipation of litigation and communications associated therewith. *See Gould Inc. v. Mitsui Min. & Smelting Co., Ltd.*, 825 F.2d 676, 680 (2d Cir.1987) (requiring "real, rather than speculative, concern that the thought processes of ... counsel in relation to pending or anticipated litigation would be exposed"). TIG argues that it has produced all information responsive to defendant's discovery requests, and that the interrogatories already served and answered were the more appropriate discovery method. As such, the deposition was unnecessary and should not proceed.

The appropriateness of TIG's responses turns on whether counsel's investigation of allegations underlying allegations in an answer, that is later presented to a 30(b)(6) deponent, precludes discussion of such investigation. There is authority that tends to support the arguments of both parties, with

*Protective Nat'l Ins. Co. v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 272–77 (D.Neb. 1989), supporting defendant's argument and *Am. Nat'l Red Cross v. Travelers Indem. Co.*, 896 F.Supp. 8 (D.D.C.1995), arguably supporting TIG's position.

In *Protective National Insurance Co.*, the court reasoned that attorney-client privilege would not provide a valid basis on which to refuse to divulge facts underlying the response to the allegations, *id.* at 279; *see also In re Six Grand Jury Witnesses*, 979 F.2d 939, 945 (2d Cir.1992) ("[a]lthough an attorney-client communication is privileged and may not be divulged, ... the underlying information or substance of the communication is not ... so privileged"). The court reasoned that the inherent difficulty in establishing the demarcation between protected work product and unprotected, discoverable facts was "determining the degree to which a particular deposition question elicits the mental impressions of the attorney who communicated a fact to the deponent," *Protective Nat'l Ins. Co.*, 137 F.R.D. at 280. The court concluded that the deponent was obliged to provide the factual basis for its allegations, and provided the following guidance:

> First, as I have said, [the deponent] has an obligation to be prepared as a Rule 30(b)(6) spokesperson. Second, [the deponent], to the extent that she is able, must recite the facts upon which [defendant] relied to support the allegations of its answer and counterclaim which are not purely legal, even though those facts may have been provided to her or her employer by [defendant's] lawyers. Third, [plaintiff] is directed, when formulating questions to [the deponent], to avoid asking questions of [the deponent] which are intended to elicit [defendant's] counsel's advice, [defendant's] counsel's view as to the significance or lack thereof of particular facts, or any other matter that reveals [defendant's] counsel's mental impressions concerning this case.... Finally, [the deponent] is specifically obligated to produce at the deposition such documents coming within the Rule 30(b)(6) notice and request to produce which are not privileged. In this regard, [the deponent] is obligated, as is her em-

ployer, [defendant], to comply with the Rule 30(b)(6) notice to produce, notwithstanding [defendant's] counsel's belief that it may (or may not) have already complied with similar discovery requests.

*Id.* at 283 (citation omitted).

The court in *American National Red Cross* refused to order investigative information disclosed. Reminiscent of the present case, discovery involved production of over 200,000 pages of documents, dozens of deposition and the exchange of hundreds of interrogatories. *Am. Nat'l Red Cross v. Travelers Indem. Co.,* 896 F.Supp. at 13. The court concluded that

> [w]hen [plaintiff's] counsel requested of [the deponent, who was an attorney in defendant's law department] a description of the 'facts and documents which [defendant] contends support' each affirmative defense, [plaintiff's] counsel was asking questions that intruded upon protected work product; in effect, what [plaintiff] was requesting was insight into [defendant's] defense plan.

*Id.* at 14. The court based its decision on the proposition that "[i]n cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research," *id.* at 13 (internal quotation marks omitted), and thereby found the documents sought not discoverable.

Of the two decisions, the reasoning of *Protective National Insurance Co.* is more persuasive. It is of no consequence that contention interrogatories may be the more appropriate route to obtain the information as nothing precludes a deposition either in lieu of or in conjunction with such interrogatories. *See United States v. Taylor,* 166 F.R.D. 356, 362–63 (M.D.N.C.1996). If the deposition is not precluded, Rule 30(b)(6) requires that "the corporation ... produce someone familiar with that subject ... [and places on the corporate deponent] an affirmative duty to make available such number of persons as will be able to give complete, knowledgeable and binding answers on its behalf." *Reilly v. NatWest Markets Group Inc.,* 181 F.3d 253, 268 (2d Cir.1999) (internal quotation marks and citation omitted).

It is further noteworthy that TIG, while objecting to the deposition questions as protected or privileged information, does not argue that contention interrogatories would be similarly inappropriate. As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information, *see United States v. Boyce,* 148 F.Supp.2d 1069, 1086 (S.D.Cal.2001), it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition.

TIG was not asked to disclose its work product but was rather required to produce a witness capable of providing facts in support of the allegations within its answer. In light of the affirmative duty imposed by Rule 30(b)(6), TIG's corporate representative was obliged to gain some understanding of the underlying facts, regardless of the source identifying underlying facts, and to answer questions accordingly. It matters not that the witnesses understanding was gleaned from documents protected as work product, as the facts within those documents are not subject to protection.

As such, TIG shall appoint a representative sufficiently familiar with the facts to respond to questions as to the pleadings. Although there exists a somewhat arbitrary line between the protections afforded work product and the absence of protection afforded the facts relied on therein, and to some degree the facts relied on in denying the allegations within a complaint will provide insight into defense strategies, it suffices to say that a party may not refuse to identify non-protected documents or facts because such information is identified in a protected document. TIG is therefore obliged to identify documents relied on by its 30(b)(6) witness and produce such documents to the extent it has not done so already. The deposition shall be rescheduled, and defendant shall conduct such deposition consistent with the four guidelines set forth in *Protective National Insurance Co. See id.* at 283.

■ As to defendant's motion for costs, this Court concludes that the legal proposition involved in the dispute is sufficiently

debatable to preclude an award of costs. The evidence submitted does not support a conclusion that Westover was unqualified as the designated deponent, but rather that there was a genuine issue as to whether he was required to disclose the requested information. Defendant's motion to compel is granted but its motion for costs is denied.

## III. RULING ON PLAINTIFF'S MOTION TO COMPEL

■ Plaintiff moves for an order compelling defendant's production of documents pertaining to arbitration, litigation or formal dispute resolution between U.S. Life Insurance Company and its reinsureds since January 1, 1997, unredacted versions of all reports, evaluations or analyses in defendant's custody or control or any reinsurance business to which WEB ever bound defendant, documents withheld on grounds of privilege listed on its privilege logs of April 14, 2003 and May 1, 2003 and documents pertaining to any attempt to rescind an agreement between U.S. Life and a reinsurer if defendant stood to benefit and any communications between defendant and U.S. Life and any other reinsurer concerning any disputes that have resulted in litigation, arbitration or formal dispute resolution. Defendant responds that the documents involving U.S. Life are irrelevant and the request is overbroad and burdensome, that unredacted copies of all documents exceed the scope of this Court's February 5, 2003 order compelling production of certain documents, and all documents withheld on grounds of privilege have been produced in their entirety except for two, which are in fact privileged.

Plaintiff argues that the documents involving U.S. Life are relevant given its joint interest agreement with defendant in one dispute, a 50/50 sharing arrangement between the companies for business procured for either by WEB, defendant's reliance on retrocessional arrangements with U.S. Life for passing risk assumed through WEB and this Court's ruling that analyses and reports pertaining to WEB business are fully discoverable and are not to be redacted. Plaintiff further argues that the documents provide "reasonable grounds to believe that [defen-

dant] has participated and does participate in the initiation and management of [the] disputes," and further that the documents are relevant to establish the prejudgment remedy requirement of irreparable harm because of potential exposure in pending disputes against U.S. Life and depletion of defendant's assets through judgments against defendant.

In its complaint, plaintiff alleges, as a basis for its CUTPA claim, a "willful practice of refusing to pay claims properly ceded to it by [plaintiff] (and others)." The disputes at issue involve not defendant but U.S. Life, a separate insurance company. Plaintiff argues that the close relationship of U.S. Life and defendant justifies discovery into all disputes involving U.S. Life, and further that defendant may have orchestrated the disputes through its relationship with U.S. Life. It is not apparent why defendant entered into a joint defense and cooperation agreement governing the ongoing arbitration between U.S. Life and Superior National Insurance, and such an agreement does not necessarily implicate similar circumstances to the present case. Furthermore, the mere suggestion that defendant raised the issue of rescission of a reinsurance agreement with Superior National Insurance does not justify discovery into all disputes. It does, however, permit discovery into the identified proceeding involving Superior National Insurance, notwithstanding defendant's contention that there is no reason to believe that U.S. Life would yield to defendant's alleged entreaties to rescind its reinsurance agreement.

■ Plaintiff also argues that discovery relevant to the disputes may tend to produce evidence relevant to establishing irreparable harm and a basis for preliminary injunctive relief in the form of proof of defendant's diminishing assets. Such is not apparent as the disputes, to the extent identified, constitute unsubstantiated, unrealized claims and U.S. Life is presumably one of many ventures in which defendant is engaged. Defendant has further disclosed its assets by order of this Court, and plaintiff has not indicated that such disclosure was incomplete in any way. If plaintiff wants to ascertain defendant's present financial status, the more ap-

propriate means would appear to be corporate financial statements, not potential claims involved in such disputes.

Plaintiff also argues that documents were improperly redacted and moves that defendant be ordered to produce unredacted copies. In the February 5, 2003 order, defendant was ordered to provide unredacted copies of two reports that had been redacted on defendant's belief that the business pertained to other companies and was therefore irrelevant. Nowhere in that Order is defendant instructed not to redact documents falling outside the scope of discovery ordered. The order provided that "details of those disputes restricted in time to a period relatively contemporaneous with the allegations in the present case might substantiate such a pattern or practice." The documents were produced pursuant to a request for all documents pertaining to WEB's business with defendant, without exception. Defendant objected to the request on the ground that the only three documents satisfying the production request "contain highly confidential, proprietary and sensitive business information relating to numerous reinsurance contracts unrelated to either [plaintiff] or TIG." As the basis for the redactions is unclear, and in light of defendant's suggestion, defendant shall produce unredacted copies consistent with the February 5, 2003 order and, to the extent documents remain redacted, shall provide unredacted copies to this Court for further review.

In light of the suggestion of the parties, the remaining documents at issue not produced on grounds of privilege and designated Documents 1 and 78, shall be submitted in unredacted form for further review. All documents ordered produced for *in camera* review shall be delivered within five days of the date of this ruling.

## IV. TIG'S MOTION FOR EXPEDITED CONSIDERATION OF ITS MOTION TO COMPEL

TIG moves for expedited consideration of its motion to compel defendant's production

**2.** This Court acknowledges TIG's request that defendant be ordered to produce the hard drives

of the hard drives for the WEB computers. TIG's motion is construed as a motion to set an expedited briefing schedule and is granted as such.[2] Defendant shall file its memorandum in opposition to TIG's motion not later than June 13, 2003, and TIG shall file any reply not later than June 18, 2003.

## V. CONCLUSION

Defendant's motion to compel plaintiff's production (Doc. No. 209) is **granted in part**, defendant's motion to compel TIG's production (Doc. No. 216) is **granted in part** as consistent with the foregoing opinion. Plaintiff's motion to compel production (Doc. No. 225) is **granted in part**. TIG's motion for expedited consideration of its motion to compel production of the hard drives for the WEB computers (Doc. No. 243) is **granted**.

SO ORDERED.

by June 6, 2003 but declines to do so absent a response from defendant.