**Ellen L. GRAHAM, Plaintiff,**

v.

**CASEY'S GENERAL STORES, Defendant.**

**No. IP01–1310–C–K/H.**

United States District Court, S.D. Indiana, Indianapolis Division.

March 18, 2002.

Kenneth E. Lauter, Haskin Lauter Cohen & Larue, Indianapolis, IN, for plaintiff.

Kenneth J. Yerkes, Barnes & Thornburg, Indianapolis, IN, for defendant.

## ENTRY ON PLAINTIFF'S MOTION TO QUASH SUBPOENAS

BAKER, United States Magistrate Judge.

In a hotly debated issue among labor and employment lawyers in this district and beyond, the Court addresses the sufficiency of non-party requests for production of documents to a plaintiff's former and current employers in an employment discrimination case. Plaintiff claims such requests lack relevancy and are utilized as a tool to invade privacy. Defendant states they are a useful tool to craft its defenses. Both positions have some merit. For the reasons set forth below, Plaintiff's motion to quash subpoenas duces tecum is GRANTED IN PART and DENIED IN PART.

### I. Background

On December 4, 1997, Plaintiff Ellen L. Graham began her employment with Defendant Casey's General Stores, Inc. as an assistant manager. In July 1998, Defendant promoted Graham to manager. However, as her time with Defendant progressed, Graham's fortunes took a turn for the worse. On November 20, 1998, while at work, Graham was severely injured when a pickup truck crashed into the store. Her injuries resulted in headaches, backaches, and occasional blackouts.

After a medical leave, Graham returned to work with weight-lifting and movement restrictions. Since her return to work, Graham alleges she was the subject of discriminatory acts as a result of a disability and for filing worker's compensation claims. On April 12, 1999, Graham was removed from her position as manager, and on April 26, 1999, she was terminated.

Prior to her employment with Defendant, Graham worked as a clerk for the United

States Post Office in Hillsdale, Indiana. After her termination, Graham obtained employment with the Vermillion County Prosecutor's Office and has worked there continuously since January 2001.

Graham filed suit against Defendant alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and asserting a pendent state law claim of retaliation for filing a worker's compensation claim.

After Graham responded to Defendant's initial discovery requests, pursuant to Federal Rules of Civil Procedure 34 and 45, Defendant served non-party requests for production of documents and a subpoena duces tecum to both the U.S. Post Office and the Vermillion County Prosecutor's Office. These requests sought the following documents:

1. A complete and accurate copy of the personnel, employment, and/or medical files maintained in the name of Ellen L. Graham which specifically relate to Ellen L. Graham's employment with [the employer];

2. A copy of Ellen L. Graham's payroll or salary history with [the employer] including Ellen L. Graham's entitlement to benefits during her employment with [the employer]; and

3. A complete and accurate copy of any complaint, charge, or lawsuit concerning Ellen L. Graham whether internally or through any local, state, or federal governmental agency, including but not limited to the Indiana Civil Rights Commission, the Equal Employment Opportunity Commission, and the Indiana Worker's Compensation Appeals Board.

Graham filed a motion to quash, claiming that these requests are "completely irrelevant," "not reasonably calculated to lead to admissible evidence," and that they are "over broad and lack specificity." [Pl. Br., pp. 2–3]. Defendant claims the information is discoverable because: (1) Graham's job experience, skills, and capabilities at both prior and current employers are relevant as to whether she has been disqualified from a broad class of jobs based on her medical condition at issue; (2) the records are relevant as to Graham's claimed damages; (3) the records requested are relevant to Defendant's after-acquired evidence defense; and (4) the information is relevant to Defendant's general ability to defend this case. [Def.'s Br., pp. 1–2].

## II.  Discussion

### A.  Standard on Motion to Quash

Even after the recent amendments to Federal Rule of Civil Procedure 26, courts employ a liberal discovery standard. *See, e.g., Hooker v. Norfolk Southern Ry. Co.,* 204 F.R.D. 124, 126 (S.D.Ind.2001) (referencing a "liberal discovery standard"); *White v. Kenneth Warren & Son, Ltd.,* 203 F.R.D. 364, 366 (N.D.Ill.2001) ("Liberal discovery is permitted in federal courts to encourage full disclosure before trial."); *Anderson v. Hale,* 2001 WL 503045, *3 (N.D.Ill.2001) ("Information is generally discoverable under the Federal Rules of Civil Procedure. The minimal showings of relevance and admissibility hardly pose much of an obstacle for an inquiring party to overcome, even considering the recent amendment to Rule 26(b)(1).").

The purpose of the December 2000 amendment to Rule 26 was to narrow the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party." *Felling v. Knight,* 2001 WL 1782361, *2 (S.D.Ind.2001); *Builders Ass'n of Greater Chicago v. City of Chicago,* 2001 WL 1002480, *1 (N.D.Ill.2001). Nevertheless, Rule 26 goes on to state, "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules. *See Jackson v. Brinker,* 147 F.R.D. 189, 193–94 (S.D.Ind. 1993) ("[t]he scope of material obtained by a Rule 45 subpoena is as broad as permitted under the discovery rules ... if the material is relevant, not privileged, and is, or is likely to lead to, admissible evidence, it is obtainable by way of a subpoena.") (internal citations omitted); Fed.R.Civ.P. 45 advisory

committee note to the 1991 amendment. The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant. *Wauchop v. Domino's Pizza, Inc.*, 138 F.R.D. 539, 543 (N.D.Ind.1991). To meet this burden, the objecting party must "specifically detail the reasons why each [request] is irrelevant. . . ." *Schaap v. Executive Indus., Inc.*, 130 F.R.D. 384, 387 (N.D.Ill.1990).

Under Rule 26(b)(2), the Court must weigh the burden or expense of proposed discovery and its likely benefit by taking into account "the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Simon Property Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D.Ind.2000) (Hamilton, J.).

## B.   Medical Records

■   Encompassed in its non-party requests, Defendant seeks Graham's medical records to "help demonstrate whether Plaintiff can prove a key element of her prima facie case—that she has a legal disability." [Def.'s Br., pp. 7–8]. Indeed, for Graham to demonstrate she is substantially limited in the major life activity of working, she must show she is precluded from performing either a class of jobs or a broad range of jobs in various classes. *See, e.g., Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 998 (7th Cir.2000) (in the context of working, "substantially limits" means "significantly restricted in the ability to perform a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."); *see also* 29 C.F.R. § 1630.2(j)(3)(i) (listing factors to assess the substantiality of the impairment on plaintiff's ability to work).

■   Graham does not contest Defendant's right to her medical records. *See, e.g., Butler v. Burroughs Wellcome, Inc.*, 920 F.Supp. 90, 92 (E.D.N.C.1996) ("Elements of a claim

under the ADA touch upon the most private and intimate details of a plaintiff's life. ADA plaintiffs, like plaintiffs in an action for medical malpractice, waive all privileges and privacy interests related to their claim by virtue of filing the complaint."). In fact, on October 16, 2001, Graham executed authorizations for the release of her medical records. The medical releases were intended to obtain records from "physicians, psychiatrists, psychologists, dentists, nurses, chiropractors, therapists, hospitals, clinics, dispensaries, home health care providers or any other medical or mental health care facility or health care provider." [Pl. Reply, p. 3]. Graham claims that Defendant could have obtained her medical records merely by serving these releases (and of course a subpoena) on her medical providers and had no need to take the more intrusive step of seeking this medical information from her employers. The Court agrees. Graham provided a lesser intrusive means for Defendant to discover the information. In the case at bar, Defendant has not shown any reason why obtaining the medical information in this manner is inadequate. Accordingly, with regard to Defendant's request for medical records, Plaintiff's motion to quash is GRANTED.[1]

## C.   Records Pertaining to Damages

■   Defendant claims it is entitled to payroll and salary history from a previous and subsequent employer to determine the relevant amount of damages, including lost wages and whether Graham mitigated her damages. [Def. Br., p. 9]. Graham does not contest that Defendant is entitled to her salary history after her termination. *See, e.g., Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846 (11th Cir.1997) (district court did not abuse its discretion in compelling discovery of employment discrimination plaintiffs' tax records). However, Graham asserts that any information related to her salary at previous employers is irrelevant to any damage calculation. Second, Graham contends that she has provided a less-intru-

---

**1.**   The Court can envision circumstances under which medical records from prior or subsequent employers could be discoverable through a third party request for personnel and employment

files. In the case at bar, the Defendant has not sufficiently articulated any such arguments to support the proposed discovery.

sive means for discovering salary information from previous employers. To this end, on February 13, 2002, Graham executed "Tax Information Authorizations" for the years 1996–2000 for Defendant to obtain her tax information from the Internal Revenue Service.

The Defendant has not provided any persuasive argument to show why obtaining this information from the IRS is unsatisfactory. For example, the Defendant has not shown (or even alleged) that the IRS's response was inadequate. Nor has Defendant shown why salary information from a previous employer is in any way relevant to damages. Accordingly, in regard to Defendant's request for payroll and salary history, Plaintiff's motion to quash is GRANTED.

## D. After–Acquired Evidence

The Supreme Court articulated the so-called "after-acquired evidence" defense in *McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 360, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). In that case, the Court considered "how the after-acquired evidence of the employee's wrongdoing bears on the specific remedy to be ordered," and concluded that where an employer discovers after termination that the employee engaged in wrongdoing, generally "neither reinstatement nor front pay is an appropriate remedy." *See also Hartman Bros. Heating & Air Conditioning, Inc. v. N.L.R.B.,* 280 F.3d 1110, 1115–16 (7th Cir.2002) (after acquired evidence doctrine "holds that there is no right to back pay if in the course of litigation over a discriminatory or otherwise unlawful discharge the employer unearths evidence that, had he known it at the outset, would have caused him, without fault, to refuse to hire the employee").

In this case, Defendant seeks to discover information from personnel and employment files to assist in establishing an after-acquired evidence defense. Graham concedes that she pleaded guilty and was convicted of criminal conversion in 1994 before her employment with Defendant. [Def. Ex. H]. If Graham was untruthful about this fact to the Postal Service, discovery of such evidence could limit her recovery under the doctrine of after-acquired evidence. As discussed below, untruthful statements about this conviction could also be relevant to her credibility.

In her pursuit to entirely quash the subpoenas, Graham relies heavily on Judge Hamilton's entry in *Perry v. Best Lock Corp.,* IP 98 0936 C H/G (S.D.Ind.1999). In that case, the defendant served nineteen subpoenas on plaintiff's former and current employees. In quashing the subpoenas, the Court observed that "the subpoenas look like nothing more than a fishing expedition, or, more accurately, an exercise in swamp-drudging and muck-racking." [Perry Entry, p. 6]. However, the situation here is quite different since Defendant did not employ a shotgun approach in serving subpoenas like in *Perry,* but rather properly limited the subpoenas to the employer immediately before and after Graham's employment with Defendant.

The Court finds that information sought from the Vermillion County Prosecutor's Office to establish an after-acquired evidence defense is irrelevant and not discoverable. Information concerning Graham's employment with the Vermillion County Prosecutor's Office simply has no bearing on invoking this defense.

■ Notwithstanding the after-acquired evidence defense, if Defendant were to discover that Graham was untruthful on her employment application with the Vermillion County Prosecutor's Office about her conviction or other matters relating to her previous employment, this information could be used to attack Graham's credibility. However, this information is discoverable through a lesser intrusive means than serving a subpoena on Graham's current employer. Rather, Defendant may serve a request for production on Graham requesting her employment application. In the event Graham refuses or cannot produce this document, then the Court would reconsider permitting a non-party request. Accordingly, with regard to Defendant's non-party discovery to the Vermillion County Prosecutor's Office seeking Graham's personnel and employment files, Plaintiff's motion to quash is GRANTED.

■ However, Defendant may discover from the Postal Service Graham's employment application, any documentation relating to disciplinary action taken against her, or documents relating to a termination of employment.[2] This will assist Defendant in determining whether the after-acquired evidence doctrine applies by discovering whether Graham was untruthful about events giving rise to the end of her employment with the Postal Service. Accordingly, with regard to Defendant's non-party discovery to the Postal Service seeking Graham's personnel and employment files, Plaintiff's motion to quash is DENIED.

In limiting Defendant's requests, the Court recognizes the warning highlighted by *McKennon:*

> The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the [ADEA] is not an insubstantial one, but we think the authority of the courts to award attorney's fees, mandated under the statute, 29 U.S.C. §§ 216, 626, and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses.

*McKennon,* 513 U.S. at 363, 115 S.Ct. 879.

Accordingly, with regard to Defendant's non-party request for personnel and employment records, Plaintiff's motion to quash is GRANTED IN PART and DENIED IN PART.

### E. Other Employment Records

Defendant also seeks to discover whether Graham filed any complaints, grievances, lawsuits, or charges with these current and former employers. It is conceivable that Defendant could discover Graham filed previous frivolous claims that may go to her credibility and may be so compelling as to warrant their use at trial. *See Travers v. Travenol Laboratories, Inc.,* 94 F.R.D. 92, 93 (D.C.Ill.1982) (in race discrimination case, defendant was entitled to discover from plaintiff's former attorney the record of a previous employment discrimination charge brought against a previous employer).

For instance, in *Gastineau v. Fleet Mortg. Corp.,* 137 F.3d 490 (7th Cir.1998), plaintiff on appeal claimed the district court erred in denying his motion in limine in defendant's evidence that he sued three of his former employers. The defendant claimed it was relevant to show plaintiff's "litigiousness." *Id.* at 495. The Seventh Circuit held that this evidence was admissible to show plaintiff's motive, state of mind, credibility, and modus operandi. *Id.* Therefore, the Defendant should be entitled to discover previous complaints, grievances, lawsuits, and charges filed by Graham during her tenure with the Postal Service.[3]

The tougher question is whether Defendant may discover this information from the Vermillion County Prosecutor's Office. Graham contends that subpoenas sent to her current employer serve no other purpose than to embarrass and harass her. [Pl. Br., pp. 3, 7]. Graham has a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties for her in her new job. While discovery of this information may go to Graham's credibility or motive, the Court concludes that Defendant, to overcome this legitimate concern, must present independent evidence that provides a reasonable basis for it to believe that Graham has filed complaints, grievances, lawsuits, or charges relating to her employment with the Vermillion County Prosecutor's Office.[4]

Accordingly, with regard to Defendant's subpoena to Graham's previous employer soliciting information on complaints, grievances,

---

2. If Graham was terminated from the Postal Service, a form SF–50 should reflect this fact.

3. Graham does not have a privacy interest in these documents because if she has filed previous lawsuits or administrative charges, they are public record and readily obtainable. *Bennett v. Bombela,* 1996 WL 745384, *5 (N.D.Ill.1996) ("lawsuits are a matter of public record"); *Mob-*

ley v. Dillon Companies, Inc., 153 F.3d 727 (10th Cir.1998) ("EEOC charges were matters of public record").

4. Such evidence may be obtained by way of a public records search, interrogatories, or through Graham's deposition.

lawsuits, or charges, Graham's motion to quash is DENIED because there are no legitimate concerns of harassment. However, with regard to Defendant's subpoena to the Vermillion County Prosecutor's Office requesting this information, Graham's motion to quash is GRANTED.

On a related note, since there is a privacy interest in personnel and employment files, (*see Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir.1994) (finding that turning over personnel files would invade the privacy of employees)), the parties are encouraged to enter into a mutually agreeable protective order pursuant to Federal Rule of Civil Procedure 26(c) to protect those interests, facilitate discovery, and prevent any future discovery disputes.

### F. Defendant's "General Ability to Defend" the Case

Finally, Defendant claims it is entitled to information encompassed in its non-party requests for its "ability to defend this case." [Def.'s Br., p. 11]. Presumably, this is offered as a "catch all" for Defendant to obtain documents thorough its non-party requests. However, Defendant failed to develop this reason in any meaningful way. As a result, to the extent that there are additional reasons other than the ones addressed above that Defendant claims entitle it to discovery, they are waived.

### III. Conclusion

Accordingly, with regard to the Vermillion County Prosecutor's Office subpoena, Plaintiff's motion to quash is GRANTED. With regard to the Postal Service subpoena, Plaintiff's motion to quash is GRANTED IN PART and DENIED IN PART. Plaintiff's motion to quash is GRANTED to the extent Defendant seeks any medical records or documents from the Postal Service relating to Graham's salary. Plaintiff's motion to quash is DENIED to the extent Defendant seeks from the Postal Service any documents reflecting disciplinary action or termination, her application for employment, and any complaints, grievances, lawsuits, or charges filed by Graham.

Consistent with this entry, pursuant to Rule 26(c), the parties are encouraged to enter into a mutually agreeable protective order to prevent future discovery disputes and facilitate discovery.

So ordered.