U.S. EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION, Plaintiff,

v.

CAESARS ENTERTAINMENT,
INC, et al., Defendants,

and

Elina Masid, et al., Plaintiff–Intervenors.

No. 2:05–cv–0427–LRH–PAL.

United States District Court,
D. Nevada.

Aug. 22, 2006.

Anna Park, Connie Liem, Gregory L. McClinton, Victor Viramontes, U.S. Equal Employment Opportunity Commission, Legal Unit, Los Angeles, CA, for Plaintiff.

Ella S. Chatterjee, Federico C. Sayre, Law Offices of Federico Castelan Sayre, Santa Ana, CA, Matthew Q. Callister, Callister & Reynolds, Las Vegas, NV, for Plaintiff–Intervenors.

Deborah L. Westbrook, Patrick H. Hicks, Veronica A. Arechederra–Hall, Littler Mendelson, PC, Lloyd W. Baker, Kurt D. Anderson, Baker Law Offices, Riley A. Clayton, Hall Jaffe & Clayton, LLP, Las Vegas, NV, Cory M. Jones, Royal, Jones, Dunkley & Wilson, Henderson, NV, for Defendants.

## ORDER

LEEN, United States Magistrate Judge.

This matter is before the court on Defendant's Renewed Motion for Protective Order (# 100), filed June 19, 2006.

## BACKGROUND

### I.  The Complaint

Plaintiff U.S. Equal Employment Opportunity Commission ("EEOC") brought this action on behalf of six female employees of defendants, and a class of similarly situated employees. (Complaint (# 1), at 4.) The complaint alleges defendants engaged in unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 stemming from allegations of unlawful sexual harassment, sex-based harassment in the form of verbal harassment, hostile work environment, retaliation and/or termination by other employees of defendants. *Id.* Plaintiffs/Intervenors intervened in this action by filing a motion to intervene (# 3) on May 11, 2005. The court granted the motion and Plaintiffs/Intervenors filed a Complaint in Intervention (# 15) on June 16, 2005.

### II.  Procedural History

The motion seeks a ruling on the merits of defendant's prior Emergency Motion for Protective Order (# 84), filed May 15, 2006. A hearing was conducted on May 25, 2006, during which time the court considered defendant's Motion (# 84) and plaintiff EEOC's Opposition (# 90). At the conclusion of the hearing, the court gave the parties some guidance, and indicated that the issue would be taken under advisement and a written order would issue. (*See* Minutes, # 91.) The court ordered the parties to submit a joint status report by June 6, 2006, and that a status conference would be held on June 8, 2006. *Id.* The parties filed a joint status report (# 94) on June 6, 2006 stating that the court could vacate the June 8, 2006 status conference as "the parties have resolved their outstanding issues." Accordingly, the court vacated the status conference and issued an Order (# 99) denying Defendant's

Emergency Motion for Protective Order (# 84) as moot.

On June 19, 2006, the defendant filed a Renewed Motion for Protective Order (# 100) in which it explained that the parties still sought a written order on the original Emergency Motion for Protective Order (# 84) as the issues the parties indicated in their joint status report had been resolved were "collateral" to the still unresolved issues raised in the original motion. The EEOC filed a Notice of Non–Opposition on Defendant's Renewed Motion for Protective Order Solely Requesting a Ruling on the Merits (# 101), and the defendant filed a Reply (# 109) disputing EEOC's characterization of the procedural history.

## III. Nature of the Dispute

The defendant seeks a protective order precluding questioning of a corporate representative pursuant to Federal Rule of Civil Procedure 30(b)(6) concerning two of fourteen areas of examination identified by the EEOC in its Amended Notice of Deposition, attached as Exhibit B to defendant's motion. The two areas of examination in question are:

10. The factual information and source of such information supporting contentions as reflected in Defendants' position statement(s) in response to the EEOC charges of discrimination filed by Elina Masid, Candelaria Turcios, Tange Johnson, Jessica Alvarado Panameno, Maribel Mendoza.

11. The factual information and source of such information supporting Defendants' defense and affirmative defenses as reflected in the pleadings and discovery responses.

Since the time the original motion was filed and the hearing was held, the EEOC has revised area of examination no. 11 to read:

11. The factual information and source of such information supporting Defendants' third, fourth, fifth, sixth, eighth, ninth, tenth, and eleventh affirmative defenses as reflected in the Answer dated July 19, 2005, and Desert Palace, Inc.'s responses and an-

swers to interrogatory no.'s 3, 4, 5, 6, 7, 8 and 9, dated March 6, 2006.

(Ex. F to Def.'s Renewed Mot.) In its renewed motion, the defendant indicates that despite the change in the language of area of examination no. 11, it still seeks a protective order precluding such questioning for the same reasons in the original emergency motion. (Def.'s Renewed Mot. at 5 n. 1.)

## IV. The Parties' Arguments

The defendant argues that "the very nature of the EEOC's request ... invades attorney work product and compels legal opinions and conclusions" and intrudes upon the attorney-client privilege. (Def.'s Emergency Mot. at 5:4–6.) The defendant also contends that obtaining this information by way of a Rule 30(b)(6) corporate representative is inefficient and burdensome, and that the information could be more expeditiously obtained by way of contention interrogatories. In addition, the defendant fears that should one of its corporate representative deponents neglect to set forth any facts upon which defendant's affirmative defenses and responses and answers to interrogatories rest, the EEOC would use the deposition transcript to prevent the defendant from relying on one or more of its affirmative defenses at trial. Finally, the defendant points out that discovery is an ongoing process, and that it may learn information it wants to use to support its affirmative defenses subsequent to the completion of the deposition in question.

The EEOC responds that the defendant has not met its burden for a protective order because the discovery sought by the defendant is not privileged. The EEOC asserts that it has indicated in numerous letters to the defendant that it does not seek privileged material or attorney work product; rather, it simply wants to know what facts the defendant relied upon in making its position statements and affirmative defenses. The EEOC contends that the use of Rule 30(b)(6) depositions is an efficient method of obtaining the information it seeks, especially in light of what it characterizes as defendant's incomplete interrogatory responses regarding affirmative defenses, and defendant's failure to supplement those responses. The EEOC argues that the cases cited by

the defendant in its motion have either been rejected by subsequent case law or are factually distinguishable. The EEOC notes that documents produced by the defendant related to these incidents prior to the filing of the complaint in this case were created by non-attorneys, and therefore no privilege or work product protection attaches. In addition, by formulating its areas of examination in this way, the EEOC is only seeking information that the defendant would need to present at trial, which is by definition neither privileged nor attorney work product. As a result, the EEOC argues that this information is necessary and relevant under Rule 26(b).

## DISCUSSION

### A. Fed.R.Civ.P. 26(b)

Fed.R.Civ.P. 26(b) was amended in 2000 and permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party." The stated purpose of the amendment was not only to narrow the scope of discovery, but also to address the rising costs and delay of discovery. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253 (S.D.Ind.2002); Advisory Committee Notes to 2000 Amendments to Fed.R.Civ.P. 26. A number of courts and commentators have addressed the scope of discovery since the 2000 Amendments to Rule 26(b). There seems to be a general consensus that the Amendments to Rule 26(b) "do not dramatically alter the scope of discovery." *World Wrestling Fed'n Entm't, Inc., v. William Morris Agency, Inc.*, 204 F.R.D. 263, 265 n. 1 (S.D.N.Y.2001). Most courts which have addressed the issue find that the Amendments to Rule 26 still contemplate liberal discovery, and that relevancy under Rule 26 is extremely broad. *See, e.g., Saket v. American Airlines, Inc.*, 2003 WL 685385, at *2 (N.D.Ill. Feb.28, 2003); *Richmond v. UPS Service Parts Logistics*, 2002 WL 745588, at *2 (S.D.Ind. Apr.25, 2002). *See also Johnson v. Mundy Indus. Contractors, Inc.*, 2002 WL 31464984, at *3 (E.D.N.C. Mar.15, 2002) (stating that the 2000 Amendments to Rule 26(b)(1) are "basically a semantic change unlikely to have much salutary effect on the conduct of discovery . . . .").

However, a number of courts have concluded that the 2000 Amendments to Rule 26(b)(1) "mandate greater scrutiny" of discovery requests. *Surles v. Air France*, 2001 WL 1142231, at *1 n. 3 (S.D.N.Y. Sept.27, 2001) ("it is intended that the scope of discovery be narrower than it was, in some meaningful way"). *Sanyo Laser Prods. Inc. v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D.Ind.2003) ("the scope of discovery has narrowed somewhat under the revised rule. The change, while meaningful, is not dramatic, and broad discovery remains the norm.") Several courts have concluded although there is no fundamental difference between the current and previous versions of Rule 26(b)(1), the difference can be ascertained by applying the principles in Rule 26(b)(2). As the court noted in *Thompson v. Dept. of Hous. and Urban Dev.*,

> Lest litigants and the court become consumed with the philosophical exercise of debating the relevance between discovery relevant to the "claims and defenses" as opposed to the "subject matter" of the pending action—the jurisdictional equivalent to debating the number of angels that can dance on the head of a pin—the practical solution to implementing the new Rule changes may be to focus more on whether the requested discovery makes sense in light of the Rule 26(b)(2) factors, than to attempt to divine some bright line difference between the old and new rule. Under this approach, when confronted with a difficult scope of discovery dispute, the parties themselves should confer, and discuss the Rule 26(b)(2) factors, in an effort to reach an acceptable compromise, or narrow the scope of their disagreement.

199 F.R.D. 168, 172 (D.Md.2001), *accord, Sanyo Laser Products, Inc., v. Arista Records, Inc.*, 214 F.R.D. 496, 500 (S.D.Ind.2003). In deciding whether to restrict discovery under Rule 26(b)(2) "the court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Smith v. Steinkamp*, 2002 WL 1364161, at *6 (S.D.Ind. May 22, 2002), *quoting, Patterson v. Avery Dennison Corp.*, 281

F.3d 676, 681 (7th Cir.2002) (internal quotations omitted). *See also Rowlin v. Alabama Dep't. of Pub. Safety,* 200 F.R.D. 459, 461 (M.D.Ala.2001) ("courts have the duty to pare down overbroad discovery requests under Rule 26(b)(2) ... The court should consider the totality of the circumstances, weighing the value of the material sought against the burden of providing it, discounted by society's interest in furthering the truthseeking function"), *citing, Sanchez v. City of Santa Ana,* 936 F.2d 1027, 1033–34 (9th Cir.1990).

### B. Protective Orders

■ Fed.R.Civ.P. 26(c) permits the court to issue a protective order when the party seeking the order establishes "good cause" for the order and "justice requires [a protective order] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ..." The burden of persuasion under Fed.R.Civ.P. 26(c) is on the party seeking the protective order. *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir.1986). In order to meet that burden of persuasion, the party seeking the protective order must show good cause by demonstrating a particular need for the protection sought. *Id.* Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." *Id.* The party seeking the order must point to specific facts that support the request, "as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." *Frideres v. Schlitz,* 150 F.R.D. 153, 156 (S.D.Iowa 1993), *citing Brittain v. Stroh Brewery Company,* 136 F.R.D. 408 (M.D.N.C.1991). A mere showing that the discovery may involve some inconvenience or expense does not suffice to establish good cause under Rule 26(c). *Turner Broadcasting System, Inc. v. Tracinda Corporation,* 175 F.R.D. 554, 556 (D.Nev.1997). As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony. *See, Medlin v. Andrew,* 113 F.R.D. 650 (M.D.N.C.1987); *Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir.1979); *In Re McCorhill Publishing, Inc.,* 91 B.R. 223 (Bankr.S.D.N.Y.1988); 8 Wright and Miller *Federal Practice and Procedure,* § 2037 (1986 Supp.).

### C. Scope of Rule 30(b)(6) Depositions

Rule 30(b)(6) provides in pertinent part that:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization.

There is some conflicting authority over the scope of a Rule 30(b)(6) deposition due to its "reasonable particularity" requirement. Most courts have concluded that "[o]nce the witness satisfies the minimum standard [for serving as a designated witness], the scope of the deposition is determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence." *Detoy v. City and County of San Francisco,* 196 F.R.D. 362, 367 (N.D.Ca.2000) (citing *Overseas Private Investment Corp. v. Mandelbaum,* 185 F.R.D. 67 (D.D.C.1999)). No "special protection is conferred on a deponent by virtue of the fact that the deposition was noticed under 30(b)(6)." *King v. Pratt & Whitney,* 161 F.R.D. 475, 476 (S.D.Fla.1995). As a result, the "reasonable particularity" requirement "imposes an obligation on a corporation to provide someone who can indeed answer the particular questions presaged by the notice ... [it] does not limit what can be asked at deposition." *Id.; but see Paparelli v. Prudential Insurance Co.,* 108 F.R.D. 727 (D.Mass.1985). Viewed in this way, the "reasonable particularity" requirement facilitates, rather than hampers, discovery. *Detoy,* 196

F.R.D. at 367 (comparing the reasoning in *King* and *Paparelli* ).

At the same time, however, courts have recognized that "defending counsel may fear ambush, and that the designating entity could be bound by the witness's answers or that the answers could be construed as admissions by the designating entity, or that the questions may enter into territory where the witness is unprepared." *Id.* Several factors ameliorate these concerns. First, "if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *King*, 161 F.R.D. at 476. Second, counsel "may note on the record that answers to questions beyond the scope of the Rule 30(b)(6) designation are not intended as the answers of the designating party and do not bind the designating party." *Detoy*, 196 F.R.D. at 367. "Prior to trial, counsel may request from the trial judge jury instructions that such answers were merely the answers or opinions of individual fact witnesses, not admissions of the party." *Id.*

The present dispute concerns the defendant's request for a protective order to limit the scope of Rule 30(b)(6) deposition questioning to preclude inquiry into the factual bases for defendant's asserted position statements and affirmative defenses. Preliminarily, the court notes that Rule 26(a)(5) provides parties with their choice of the discovery methods authorized under the Federal Rules of Civil Procedure, and that the use of Rule 30(b)(6) depositions for the purpose of obtaining the factual bases for a defendant's asserted position statements or affirmative defenses is not novel. Numerous courts in a variety of cases have considered this situation and either allowed or disallowed the practice. *See e.g. AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F.Supp. 808, 831 (M.D.Pa.1994) (compelling a corporate defendant to produce a 30(b)(6) witness to answer questions regarding the contentions and affirmative defenses detailed in defendants' answer and counterclaim); *In re Independent Serv. Organ. Antitrust Litigation*, 168 F.R.D. 651 (D.Kan.1996) (prohibiting deposition questions concerning defen-

dant's affirmative defenses due to "serious privilege concerns"); *McCormick–Morgan, Inc. v. Teledyne Industries, Inc.*, 134 F.R.D. 275 *overruled on other grounds* 765 F.Supp. 611 (N.D.Ca.1991) (concluding that "appropriately framed and timed contention interrogatories" rather than depositions of alleged infringing corporation's designated employees, was appropriate method for establishing alleged infringer's contentions). The pattern that emerges from a review of these cases is that courts faced with this scenario must decide two primary issues: (1) whether the attorney-client privilege or work product doctrine prevents the witness from answering questions regarding facts supporting the parties' contentions or affirmative defenses, and (2) if not, whether a Rule 30(b)(6) deposition is an overly burdensome method of acquiring this information, or whether less burdensome methods exist. *See e.g. Protective Nat'l Ins. Co. of Omaha v. Commonwealth Ins. Co.*, 137 F.R.D. 267, 282–83 (D.Neb.1989) (citing *Lance, Inc. v. Ginsburg*, 32 F.R.D. 51 (E.D.Pa.1962)).

### i. Attorney–Client Privilege and Work Product Doctrine

██ The attorney-client privilege does not prevent the disclosure facts communicated to an attorney, and the work product doctrine does not prevent the disclosure of facts communicated by an attorney to a client that the attorney obtained from independent sources. *Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); *Hickman v. Taylor*, 329 U.S. 495, 508, 67 S.Ct. 385, 91 L.Ed. 451 (1947). In accordance with these rules articulated by the Supreme Court, lower courts seem to agree that the attorney-client privilege does not preclude a Rule 30(b)(6) deposition of a party's claims or defenses; however, lower courts are split over whether the work product doctrine prevents Rule 30(b)(6) deposition questions concerning the facts underlying a party's contentions and affirmative defenses. *Compare Protective*, 137 F.R.D. at 279 (finding neither the attorney-client privilege nor the work product doctrine applicable) *with Am. Nat'l Red Cross v. Travelers Indemnity Co. of R. I.*, 896 F.Supp. 8, 14 (D.D.C.1995) (concluding that facts supporting affirmative defenses

were protected by the work product doctrine). For example, in *Am. Nat'l Red Cross*, the court concluded that discovery by this means was protected by the work product doctrine, reasoning that a party's decision-making in the selection of documents and information to present to defend its claim was litigation strategy. 896 F.Supp. at 14. On that basis, the court concluded that an opposing party could not ask questions of a Rule 30(b)(6) deponent about the documents themselves because the documents were inescapably bound up in the process of their selection, which was protected attorney work product. *Id.* By contrast the court in *Protective* concluded:

> There is simply nothing wrong with asking for facts from a deponent even though those facts may have been communicated to the deponent by the deponent's counsel. But, depending upon how questions are phrased to the witness, deposition questions may tend to elicit the impressions of counsel about the relative significance of the facts; opposing counsel is not entitled to his adversaries' thought processes.

137 F.R.D. at 280. In balancing these concerns, the court reasoned that any deposition of a witness who was represented by counsel posed the risk that some protected material would be disclosed, but that the risk was outweighed by the need for discovery. *Id.* at 281.

Comparing these two cases, a third court found the reasoning in *Protective* more persuasive. *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*, 218 F.R.D. 29, 34 (D.Conn.2003). This court agrees. The court in *Security* noted that

> while objecting to the deposition questions as protected or privileged information, [the party opposing deposition questions] does not argue that contention interrogatories would be similarly inappropriate. As courts have held contention interrogatories seeking the factual bases for allegations would not encroach on protected information ... it is not apparent how the same information would be otherwise unavailable through questions posed to a deponent in the course of a deposition.

*Id.* (citing *U.S. v. Boyce*, 148 F.Supp.2d 1069, 1086 (S.D.Cal.2001)). The court went on to reason that the affirmative duty imposed by Rule 30(b)(6) upon a party to produce a witness with knowledge of the underlying facts of a case was not altered in any way if that witness learned of the information by consulting documents protected as attorney work product. *Id.*

■ ˙Like the party opposing deposition questions in *Security*, the defendant in the instant case has conceded that contention interrogatories would be an acceptable means for obtaining this information. (Emergency Mot. at 7:12–18.) This court cannot discern how the same factual information can be protected by the attorney-client privilege and as attorney work product when elicited in oral deposition questions, but fully discoverable within the context of a written interrogatory. The court finds the reasoning of the *Protective, Security* and *Boyce* decisions more persuasive than the courts which have held that the work product doctrine precludes Rule 30(b)(6) deposition questions concerning facts underlying a party's contentions and affirmative defenses. Oral deposition questions of non-lawyer witnesses may pose a slightly greater risk of inadvertent disclosure of privileged or protected information, but that risk is adequately addressed by the presence of counsel who may instruct the witness not to answer improperly phrased questions which would reveal attorney-client privileged information. Since Rule 30(b)(6) imposes an affirmative duty on a party to designate a witness with knowledge of the areas of examination identified by the opposing party, that witness can be counseled on the scope of the attorney-client privilege and attorney work product doctrine in deposition preparation. Accordingly, the court finds that areas of examination nos. 10 and 11 do not inherently call for information protected by either the attorney-client privilege or the work product doctrine. Both areas of inquiry seek the discovery of facts and the source of information about the defendants' claims and defenses which are clearly relevant and discoverable within the meaning of Rule 26(b). Therefore as with written interrogatories under Rule 33, defense counsel may not object to this line of questioning on the

basis that it calls for the application of fact to law. The EEOC has repeatedly assured the court and opposing counsel that it will not seek to ask questions of the Rule 30(b)(6) deponent(s) which probe the mental impressions or thought processes of counsel or to inquire into clearly privileged communications between the corporate defendant and its counsel, and the court fully expects the EEOC will honor its commitment in this regard.

### ii. Burdensomeness

■ Having decided that neither the attorney-client privilege nor the work product doctrine prevent the proposed Rule 30(b)(6) deposition, the court must address defendant's burdensomeness argument. Courts that have examined this practice, though split in their analyses, have focused on whether the questioning calls for non-lawyers to perform legal analysis such that this information could be better obtained through contention interrogatories. In *McCormick–Morgan*, the court prohibited the depositions, reasoning that the complex nature of patent cases required answers to questions about "the bases for contentions" that called for "quasi-legal argument"; whereas in *Protective*, the court allowed the Rule 30(b)(6) deposition of an insurance carrier's accountant given that most of the answer and counterclaim referred to facts within the knowledge of someone in her position. 134 F.R.D. at 286, 137 F.R.D. at 282. Citing *Protective*, the court in *Security* came to a more expansive conclusion, holding that it "is of no consequence that contention interrogatories may be the more appropriate route to obtain the information as nothing precludes a deposition either in lieu of or in conjunction with such interrogatories." 218 F.R.D. at 34.

In the instant case, the court finds that the defendant has not met its burden of establishing the areas of examination are so burdensome to justify a denial of the EEOC's choice of discovery methods under Rule 26(a)(5). The court denies the defendant's request to require the use of contention interrogatories in lieu of a Rule 30(b)(6) deposition on the areas of examination in dispute here. Defendant's written position state-ments during the administrative process and affirmative defenses are not complex patent issues that call for "quasi-legal argument." The position statements were authored by non-lawyers, and provide the defendant's factual bases for denying any unlawful conduct. The affirmative defenses are obviously legal in nature, but the facts which support them are not. Moreover, due to the affirmative duty imposed by Rule 30(b)(6) for the corporation to designate a witness to testify on matters known or reasonably available to the corporation, the defendant and its counsel control who will testify on its behalf and have the ability, indeed, the duty to properly educate the witness or witnesses who testify on its behalf. In addition, the EEOC revised area of examination no. 11 to exclude some of the defendant's affirmative defenses that only call for legal analysis, and therefore have limited the scope of the areas of examination to affirmative defenses that require factual support.

### D. Sanctions

■ The EEOC's opposition requested sanctions under Rule 37 for what it argues is the defendant's intentional delay of discovery in this case. Rule 37(a)(4) was amended in 1970. According to the Advisory Committee, the 1970 Amendments to the Rule were intended to assure that expenses would "ordinarily be awarded unless the court finds that the losing party acted justifiably in carrying his point to the court." Fed.R.Civ.P. 37, 1970 Advisory Committee Notes. Reasonable costs and attorney's fees should be imposed unless the court finds (1) the motion was filed without a good faith effort to obtain the discovery without court intervention, (2) the objection was substantially justified, or (3) other circumstances make an award of expenses unjust. Fed.R.Civ.P. 37(a)(4)(A). A request for discovery is "substantially justified" under Rule 37 if reasonable people could differ on the matter in dispute. *Reygo Pacific Corporation v. Johnston Pump Company*, 680 F.2d 647, 649, citing, C. Wright and A. Miller, *Federal Practice and Procedure*, § 2288. The court finds the parties' respective positions were substantially justified and that no sanctions are, therefore, required.

## CONCLUSION

The two areas of examination in dispute in this motion are relevant and discoverable within the meaning of Rule 26(b). Defendant has not met its burden of establishing that a protective order should issue precluding the Rule 30(b)(6) deposition from going forward. The court will hold the EEOC to its representations that counsel will not ask questions which seek the discovery of truly privileged communications between the defendant and its counsel or which probe the mental impressions and thought processes of counsel.

Accordingly,

**IT IS ORDERED** that Defendant's Renewed Motion for Protective Order (# 100) is DENIED.