DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**ODALYS HERRERA,**
Appellant,

v.

**JARDEN CORPORATION, TONYA JARVIS,** and **JOHN CAPPS,**
Appellees.

No. 4D20-1545

[February 23, 2022]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Thomas M. Lynch, IV and Martin Bidwill, Judges; L.T. Case No. CACE13-005342.

Chris Kleppin of The Kleppin Firm, P.A., Plantation, for appellant.

Paul B. Ranis of Greenberg Traurig, P.A., Fort Lauderdale, and Brigid F. Cech Samole and Katherine M. Clemente of Greenberg Traurig, P.A., Miami, for appellees.

GROSS, J.

Odalys Herrera appeals a final judgment entered after a three-week trial where the jury returned a defense verdict on her claims alleging violation of the Florida Civil Rights Act, intentional infliction of emotional distress, and defamation. We affirm the final judgment in all respects.

We write primarily to address two issues: (1) whether the trial court erred in dismissing a whistleblower claim for being time-barred, and (2) whether the trial court erred in precluding Plaintiff's counsel from questioning Jarden's in-house litigation attorney at trial.

### *Introduction*

Herrera ("Plaintiff") was the Director of Internal Audits of appellee Jarden Corporation. Appellee John Capps was Jarden's Executive Vice President and General Counsel. Appellee Tonya Jarvis was Jarden's Vice President of Human Resources.

Plaintiff sued Jarden, Jarvis, and Capps after her termination from Jarden. She claimed that she was wrongfully terminated from Jarden based on disability discrimination in violation of the Florida Civil Rights Act ("FCRA"), and alleged four disabilities. Plaintiff also alleged claims of intentional infliction of emotional distress against Jarvis and Capps and a defamation claim against Capps, all arising from her termination.

The Defendants responded that Plaintiff was terminated after it was discovered that she had disclosed Jarden's confidential business and financial information to an unauthorized person outside of the corporation, J.J. Havekotte ("Havekotte"), so that he could complete audit work Plaintiff was required to perform as part of her job at Jarden and for which she paid him.

At trial, Plaintiff argued that Jarden's non-discriminatory reason for her firing was pretextual because (1) the reason given for her termination and the identity of the decision maker changed during the litigation, (2) she did not violate company policy, and (3) other employees were not terminated for their violations of company policy.

While the specific company policies Plaintiff was alleged to have violated varied throughout the litigation, the underlying misconduct for those policy violations—Plaintiff providing Jarden's internal information to Havekotte and paying him to complete her work—remained constant and the witness testimony and evidence made clear that Plaintiff was terminated because of such misconduct.

The case went to the jury, which heard the testimony of multiple witnesses. The verdict form asked, in relevant part, "Did Plaintiff prove by the greater weight of the evidence that Jarden Corporation terminated Plaintiff's employment because of her disability?" The jury answered "No" to this question and ultimately found for the Defendants on all counts. The trial court entered a final judgment on the jury's verdict.

### *The Trial Court Properly Dismissed the Claim Under the Florida Whistleblower Act Because It Was Time-Barred*

In 2015, Plaintiff obtained leave to file a second amended complaint. That complaint added a claim for violation of Florida's private sector Whistleblower Act ("the FWA claim").

Jarden moved to dismiss the FWA claim in the second amended complaint. Jarden argued that the FWA claim was time-barred and did not relate back to the filing of the original complaint in 2013. Jarden

2

asserted that the FWA claim rested on new facts, alleged for the first time in the second amended complaint, which included:

- Plaintiff once complained about business units violating the Foreign Corrupt Practices Act;

- Plaintiff had a meeting in the 2009 timeframe in China when a local business unit manager purportedly stated that a business unit had been bribing local government officials with petty cash;

- Jarden executives allegedly "did not care" about the information Plaintiff provided them at a meeting in China in 2009;

- This single meeting is the basis for Herrera to claim she "blew the whistle" on such conduct;

- Plaintiff was fired more than two years later in retaliation for "her opposition to illegal activity";

- Jarden "retaliated against her" more than two years later for "complaints about illegal activity in violation of the Foreign Corrupt Practices Act";

- Plaintiff "refused to participate in an unlawful activity"; and

- Plaintiff's termination in August 2011 was a "direct and proximate cause" of her complaining about a violation of the Foreign Corrupt Practices Act in 2009.

Following a hearing, the trial court granted Jarden's motion to dismiss the FWA claim as being time-barred by the statute of limitations, finding that the claim did not relate back to the filing of the 2013 complaint.

Plaintiff argues that the trial court erred by dismissing the FWA claim with prejudice as being time-barred. She contends that the FWA claim was an alternative theory for why she was terminated, and therefore related back to the filing of the original complaint, wherein she asserted her FCRA claim for wrongful termination based on disability discrimination.

Plaintiff's argument incorrectly focuses on the fact of termination as the central event in the relation back analysis. A proper application of the relation back doctrine hones in on the conduct giving rise to the termination, not the termination itself.

3

In the second amended complaint, Plaintiff added a claim for violation of Florida's private sector Whistleblower Act under section 448.102, Florida Statutes (2013).  Section 448.103(1)(a) provides that an employee subjected to a retaliatory personnel action in violation of this act may bring a civil action "within two years after discovering that the alleged retaliatory personnel action was taken, or within four years after the personnel action was taken, *whichever is earlier*."  § 448.103(1)(a), Florida Statutes (2013) (emphasis added).

In this case, the alleged retaliatory personnel action (Plaintiff's termination) occurred in August 2011, but Plaintiff did not add the FWA claim until March 2015, after the statute of limitations had expired.  The key issue is whether the FWA claim related back to the timely filing of the original complaint (February 2013), such that it fell within the statute of limitations.

"An amended complaint raising claims for which the statute of limitations has expired can survive a motion to dismiss if the claims relate back to the timely filed initial pleading."  *Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 43–44 (Fla. 2017) (citation omitted).  Under Florida Rule of Civil Procedure 1.190(c), "[w]hen the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading."  Fla. R. Civ. P. 1.190(c).  "[A]n amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim."  *Holley v. Innovative Tech. of Destin, Inc.*, 803 So. 2d 749, 750 (Fla. 1st DCA 2001) (quoting *Kiehl v. Brown*, 546 So. 2d 18, 19 (Fla. 3d DCA 1989)).  "The relation back doctrine should be liberally applied."  *Id.*

"[T]he proper test of relation back of amendments is not whether the cause of action stated in the amended pleading is identical to that stated in the original . . . but whether the pleading as amended is based upon the same specific conduct, transaction, or occurrence between the parties upon which the plaintiff tried to enforce his original claim."  *Associated Television & Commc'ns, Inc. v. Dutch Vill. Mobile Home of Melbourne, Ltd.*, 347 So. 2d 746, 748 (Fla. 4th DCA 1977) (citation omitted).  "If the amendment shows the same general factual situation as that alleged in the original pleading, then the amendment relates back even though there is a change in the precise legal description of the rights sought to be enforced, or a change in the legal theory upon which the action is brought."  *Id.* (citation omitted).  "The test is whether 'the original pleading gives fair

notice of the *general fact situation* out of which the claim or defense arises.'" *Kalmanowitz v. Amerada Hess Corp.*, 125 So. 3d 836, 840 (Fla. 4th DCA 2013) (quoting *Flores v. Riscomp Indus., Inc.*, 35 So. 3d 146, 148 (Fla. 3d DCA 2010)); *see also Janie Doe 1 ex rel. Miranda v. Sinrod*, 117 So. 3d 786, 789 (Fla. 4th DCA 2013) (stating that "a new cause of action—and even a new legal theory—can relate back to the original pleading *so long as the new claim is not based on different facts,* such that the defendant would not have 'fair notice of the general factual situation'") (citation omitted) (emphasis added).

In this case, Plaintiff contends that the FWA claim relates back to the original complaint because it was merely an "alternative theory" for why she was terminated. But the FWA claim was based on different facts wholly unrelated to her original complaint.

The original complaint detailed Plaintiff's various disabilities that supported her claim for discrimination under the FCRA. The FWA claim involved a meeting in China during the 2009-2010 timeframe where Plaintiff learned of the company's alleged bribery of local government officials. Plaintiff contended that she blew the whistle on this unlawful activity and was fired as a result.

None of the whistleblower facts were pled in the earlier complaints. The FWA claim did not arise out of the same conduct, transaction, or occurrence set forth in the earlier complaints. The rationale of Rule 1.190(c) is fair notice to the defendant about the facts giving rise to liability. The earlier complaints did not give "fair notice" of the fact situation giving rise to the FWA claim.

We distinguish this case from *Fabbiano v. Demings*, 91 So. 3d 893 (Fla. 5th DCA 2012), upon which Plaintiff relies. In that case, the original complaint alleged that the plaintiff was patronizing Pleasure Island when the staff called security due to their belief that plaintiff and his friends were using fake ID cards. *Id.* at 894. An off-duty deputy who was working security began to escort the plaintiff and his friends to the security booth. *Id.* The plaintiff claimed that during this encounter, the deputy threw him to the ground without provocation or justification and twisted his arm, despite being told that this arm had been recently fractured. *Id.*

The *Fabbiano* plaintiff filed a one-count complaint against the Sheriff's Office for negligence. *Id.* Then, after the applicable statute of limitations had expired, the plaintiff sought to amend his complaint to change his theory of liability from negligence to battery, asserting that the battery occurred within the scope of the deputy's employment by the Sheriff. *Id.*

The trial court denied the plaintiff's request to amend the complaint and granted judgment for appellee on the original complaint. *Id.*

On appeal, the *Fabbiano* court reversed, stating: "[T]here is no doubt that the amended pleading alleges a claim that arose out of the same occurrence as the original pleading because it is based upon the identical act, resulting in the identical injury." *Id.* The court held that the amended complaint related back to the original filing, finding that although the original claim and amended claim were predicated on different legal theories, they "arose from the same occurrence" and "involved the same plaintiff, the same injuries, and the same damages." *Id.* at 896.

Here, Plaintiff argues that if the appellant in *Fabbiano* can change his legal theory of recovery from negligence to battery, then she can "certainly add a wrongful termination whistleblower claim when she already has a claim for wrongful termination based on disability." However, in *Fabbiano,* the battery claim was "based upon the identical operative facts as the negligence claim" and therefore "arose from the same occurrence" such that plaintiff was permitted to change his legal theory of recovery from negligence to battery. 91 So. 3d at 893. In this case, the FWA claim and the disability discrimination claim under the FCRA were not based upon identical, or even similar, operative facts. As discussed above, the FWA claim alleged that Plaintiff blew the whistle on alleged violations of the Foreign Corrupt Practices Act in China and was later terminated in retaliation for her complaints of illegal activity, whereas the discrimination claim alleged that Jarden wrongfully terminated her because of her disabilities. The only fact that these claims have in common is that Plaintiff was ultimately terminated from her employment at Jarden.

The cases cited by Plaintiff in her reply brief involve situations where the untimely claim sought to be added arose out of the same "conduct, transaction, or occurrence as the original pleading," so they are distinguishable from the case at bar. *See Palm Beach Cnty. Sch. Bd. v. Doe*, 210 So. 3d 41, 47 (Fla. 2017) (approving line of cases recognizing that "while amendments with new claims do not always relate back, they can do so if the claims are not factually distinct from those within the original complaint" and finding that the Title IX claim sought to be added "arose out of the same conduct as the original negligence claims—the alleged molestation of students by their teacher and the School Board's failure to protect against that harm"); *Kopel v. Kopel*, 229 So. 3d 812, 818 (Fla. 2017) (holding that fifth amended complaint related back to filing of the original complaint where "the new claim is not factually distinct, but arises out of the same conduct, transaction, or occurrence as that established in the original pleading"); *Roden v. R.J. Reynolds Tobacco Co.,* 145 So. 3d 183,

187 (Fla. 4th DCA 2014) (finding that wrongful death claim and personal injury claim arose out of the same transaction because both were based on decedent's claim of injury due to smoking cigarettes and the defendant was on notice of the decedent's death well before the substituted plaintiff sought to amend the complaint and well within the two-year statute of limitations period).

### *The Trial Court Properly Precluded Plaintiff from Questioning Jarden's In-House Litigation Attorney at Trial about Communications She Had with Jarden Employees in Order to Prepare a Position Statement for the FCHR*

After her termination, Plaintiff filed a charge of discrimination with the Florida Commission on Human Relations ("FCHR"). In September 2012, Lisa Pisciotta, Jarden's in-house senior litigation counsel, sent the FCHR a letter and accompanying documents setting forth Jarden's position in response to Plaintiff's charge.

The position statement asserted that Jarden terminated Plaintiff "for her improper conduct and violation of Company policy." Pisciotta identified the following policies as being relevant to the charge of discrimination: (1) fair employment policy, (2) business conduct and ethics, (3) rules of conduct, (4) disclosure of financial and other important company information, and (5) computer usage. Pisciotta stated that Plaintiff "violated Company policy by releasing confidential financial information to a third party without the consent of her manager, and by offering payment to that third party in exchange for having the third party complete audit work that [Plaintiff] was supposed to perform," and that this "warranted immediate termination" per company policy.

During discovery in the underlying lawsuit, Plaintiff moved to compel Pisciotta's deposition. Jarden opposed the motion, arguing that Plaintiff sought to invade attorney-client and work-product privileges.

The issue of deposition was resolved by an agreed order stating that the Defendants agreed to "withdraw any objection to the admissibility of the position statement at trial . . . as long as the Plaintiff agrees not to depose Ms. Pisciotta."

Plaintiff later sought to call Pisciotta as a trial witness in order to determine "where she got the information" that she included in the position statement. Jarden opposed this effort, maintaining that Pisciotta was not a fact witness and that communications between her and Jarden employees were privileged.

The trial court entered a pretrial order granting Jarden's motion to preclude Pisciotta's trial testimony.

Plaintiff contends that the trial court erred in applying the attorney-client privilege to prohibit her from calling Pisciotta at trial.[1]

The attorney-client privilege "protects confidential communications between a lawyer and client, as well as third persons to whom disclosure is in furtherance of the rendition of legal services and those reasonably necessary for the transmission of the communication." *Ford Motor Co. v. Hall-Edwards*, 997 So. 2d 1148, 1153 (Fla. 3d DCA 2008). This privilege "extends to communications between employees and in-house general counsel, whether oral, contained in documents or contained in a database." *Id.*; *see also Fla. Marlins Baseball Club, LLC v. Certain Underwriters at Lloyd's London Subscribing to Policy No. 893/HC/97/9096*, 900 So. 2d 720, 721 (Fla. 3d DCA 2005) ("[T]he attorney-client privilege protects communications on legal matters between corporate in-house counsel and corporate employees.").

"The burden of establishing the attorney-client privilege rests on the party claiming it." *S. Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377, 1383 (Fla. 1994) (citation omitted). However, "[w]hen communications appear on their face to be privileged, the party seeking disclosure bears the burden of proving that they are not." *Shell Oil Co. v. Par Four P'ship*, 638 So. 2d 1050, 1050 (Fla. 5th DCA 1994).

To determine whether a corporation's internal communications are protected by the attorney-client privilege, courts consider the following criteria:

> (1) the communication would not have been made but for the contemplation of legal services;

---

[1] Plaintiff also contends that the trial court erred by prohibiting her from deposing Pisciotta, but that claim was not preserved. The record reflects that Plaintiff withdrew her motion to compel the deposition in return for the Defendants withdrawing their objection to the admissibility of Jarden's FCHR position statement at trial. Plaintiff's attorney acknowledged that he "agreed [he would not] depose her," stating that "I don't like to call people who I haven't deposed, but I certainly gave up my right to depose [Pisciotta] in exchange to get that position statement in."

(2) the employee making the communication did so at the direction of his or her corporate superior;

(3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services;

(4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties;

(5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*S. Bell Tel.*, 632 So. 2d at 1383 (citing *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970) and *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1977)).

Here, Plaintiff sought to question Pisciotta regarding her communications with Jarden employees that were protected by the attorney-client privilege. Plaintiff's attorney wanted to ask the attorney what went into her creation of Jarden's FCHR position statement.[2] It is undisputed that Pisciotta had no first-hand, personal knowledge about the facts pertaining to Plaintiff's termination. Instead, Pisciotta was provided information about the case in her role as in-house litigation counsel by other Jarden employees for the purpose of the position statement that was eventually submitted to the FCHR in response to Plaintiff's charge of discrimination. There is a distinction between the employees' discussions with the corporate attorney and the statements contained within the position paper the attorney prepared and submitted to the FCHR. The former are privileged, just like any client's conversation with an attorney that leads to the attorney's preparation of a complaint or other pleading.

Because Plaintiff essentially sought to question Pisciotta regarding communications she had with Jarden employees and executives in preparing the position statement on behalf of Jarden, the requested testimony regarding these matters was privileged as "communications on

---

[2] For example, Plaintiff's attorney stated that he wanted to question Pisciotta "on why that position statement states what it does." The attorney wanted to ask Pisciotta about "what's in the position statement and why it's there, where she got the information from, who she spoke to, who's telling her this . . . ." The attorney argued that Pisciotta "got that information from someone or from somewhere, and I should be able to question her on that."

9

legal matters between corporate in-house counsel and corporate employees." *Fla. Marlins*, 900 So. 2d at 721.

We reject Plaintiff's assertion that attorneys who draft position statements "are subject to cross-examination on them and being called as trial witnesses." The cases Plaintiff cites to support this argument do not stand for such a proposition.

In *United States E.E.O.C. v. Caesars Entertainment, Inc.*, 237 F.R.D. 428 (D. Nev. 2006), the magistrate judge held that the attorney-client privilege and work product doctrine did not preclude *deposition questioning* of the defendant's *corporate representative* regarding the factual bases for defendant's position statements, which were authored by non-lawyers in response to EEOC charges. In reaching this conclusion, the court noted that the EEOC had "repeatedly assured the court and opposing counsel that it will not seek to ask questions of the . . . deponent(s) which probe the mental impressions or thought processes of counsel or to inquire into clearly privileged communications between the corporate defendant and its counsel . . . ." *Id.* at 435.

Here, the proposed deposition was not of a corporate representative, but an attorney who drafted the position statement as part of her legal duties for the corporation. And, unlike *Caesars*, the Plaintiff's attorney in this case sought to question Pisciotta at trial about *communications* to her regarding the facts contained in the position statement. As the United States Supreme Court has recognized, the attorney-client privilege protects communications between an attorney and client, not the underlying facts:

> "[T]he protection of the privilege extends only to *communications* and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to this attorney."

*Upjohn Co. v. U.S.*, 449 U.S. 383, 395–96 (1981) (quoting *Phila. v. Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (E.D. Pa. 1962)).

The rest of the cases cited by Plaintiff involve the admissibility of the position statement itself, which was not at issue in this case because the Defendants stipulated to its admissibility at trial. *See Brooks v. Grandma's*

*House Day Care Ctrs., Inc.*, 227 F. Supp. 2d 1041 (E.D. Wis. 2002) (holding that letter written by corporate counsel and submitted to EEOC in response to plaintiff's charge of discrimination was admissible); *Gage v. Metro. Water Reclamation Dist. of Greater Chi.*, 365 F. Supp. 2d 919, 936–37 (N.D. Ill. 2005) (stating that "an employer's position statement in an EEOC proceeding may be admissible to the extent it constitutes an admission, or to show the employer has given inconsistent statements in justifying its challenged decision, which may tend to prove that its stated reasons are pretexts"); *Jones v. Nat'l Am. Univ.*, 608 F.3d 1039 (8th Cir. 2010) (concluding trial court did not abuse its discretion by allowing plaintiff to use university employer's response to charge of discrimination to impeach the committee members' testimony where such testimony was inconsistent with the employer's response to the charge).

### *None of the Other Issues Raised Constitute Reversible Error*

We have considered the other issues raised and find no error.

Plaintiff sought to introduce evidence of two executives' generous severance packages after Jarden was acquired by another company. "Evidence of bias is subject to balancing under the provisions of section 90.403, [Florida Statutes (2019),] and a trial court's determination of how far an inquiry into bias may proceed is within the trial court's discretion." *Tobin v. Leland*, 804 So. 2d 390, 393 (Fla. 4th DCA 2001). Under section 90.403, "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence." § 90.403, Fla. Stat. (2019). The trial judge did not abuse his discretion in determining that the probative value of the severance packages was substantially outweighed by the danger of unfair prejudice.

Finally, there was no error in the jury instructions given or the verdict form provided to the jury.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

*      *      *

### *Not final until disposition of timely filed motion for rehearing.*